Huntington, Appellant, vs. Fraternal Reserve Association of Oshkosh, Wisconsin, Respondent.

*February 11—March 8, 1921.*

*Insurance: Fraternal associations: Change of occupation by insured: Becoming member of regular army: Death occurring from natural causes: Officers of local association: Authority to modify contract provisions.*

1. Although the federal statutes providing for a military establishment of the United States distinguish between *"the* regular army" and other military organizations, an insured who joined the Wisconsin National Guard and later became a member of the army of the United States was subject to the

provisions of a clause in his insurance certificate decreasing the benefit in case the insured died while engaged in certain designated employments, one of which was "regular army."

2. Under the clause decreasing liability in case a claim accrues while the insured was engaged in a changed occupation, "whether resulting from such changed occupation or not, directly or indirectly," the beneficiary is not entitled to recover the face value of the certificate, even though the insured died from natural causes and not from any hazard peculiar to war. *Kelly v. Fidelity Mut. L. Ins. Co.* 169 Wis. 274, distinguished.

3. Under by-laws of a fraternal insurance association providing that the officers of a local council were agents of the members and not of the supreme council, and had no authority to disregard laws of the order relative to death certificates or funds, the secretary of a local council had no authority to bind the insurer by a statement to a beneficiary that the certificate of the insured, who had enlisted in the army in time of war, did not require the payment of extra assessments to keep the certificate good for its full value as long as insured was on this side of the ocean.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Affirmed.*

Action by the beneficiary of an insurance certificate, issued by the defendant, a fraternal insurance company, on the life of Harry Huntington. From a judgment in favor of the defendant plaintiff appealed.

For the appellant there was a brief signed by *A. M. Andrews,* attorney, and *Andrews & Brunner,* of counsel, all of Shawano; and the cause was argued orally by *A. M. Andrews.*

*E. R. Hicks* of Oshkosh, for the respondent.

OWEN, J. The insurance certificate was issued on the 6th day of April, 1915. By its terms, the certificate and the articles and by-laws of the defendant constituted the insurance contract. The certificate provided that

"If the insured, after one year of continuous insurance, shall engage in any of the following occupations, viz.: railway switchman,     . . soldier in regular army in time of

war, . . . and any claim accrues while insured is so occupied, whether resulting from .such changed occupation or not, directly or indirectly, there shall be paid forty per cent. only of said claim, which shall be in full satisfaction thereof, in consideration of such extra-hazardous risk having been carried for the premium named in this certificate. If the insured, while engaged in any of the foregoing classified hazardous occupations, prefers to keep his certificate in force for the full amount, he may do so, by notifying the supreme secretary in writing, and paying, while so occupied, such additional amount with each premium as required to cover the extra hazard, according to the foregoing classification."

The by-laws contain the following provisions:

"Persons engaged in the following occupations shall not be admitted to membership; and any member holding a benefit certificate and engaging in any of the said occupations shall by so doing render his or her certificate null and void, except as modified by by-laws peculiarly applicable to specific classes of certificates. Such prohibited occupations shall be as follows: Railway freight brakeman, . . . soldier in regular army in time of war, except a member who engages in service in the United States army or navy in time of war may at his option maintain his certificate in force for the full amount of the benefit payable, by paying for the 'war risk' at the additional rate of $3 per month, or $35 per year per $1,000 of insurance, which payment shall be made in advance, in addition to and at the time of payment of the regular premium payable on said certificate and shall continue throughout said service; if no such option be exercised by the member, or if the member shall fail to pay such additional war risk. the liability of this association for death or disability occurring during said period, whether resulting from said service, or not, directly or indirectly, shall be limited to forty per cent. of the amount otherwise payable under this certificate; and said service may begin at any time after said member procures the certificate in any class."

The insured, Harry Huntington, joined the Wisconsin National Guard in June, 1917, and thereafter, under army regulations, became a member of the army of the United States at the time the United States was engaged in war

with Germany and came under federal control pursuant to law, and remained in such service in the United States army until his death. During the time of said army service the insured paid no additional war risk on his said certificate but continued to pay the regular premium payable thereon. The insured died at Base Hospital, Camp Merritt, New Jersey, July 9, 1918, while a member of the army aforesaid. It is conceded that his death was due to natural causes and was not the result of extra war hazard.

Prior to the commencement of this action the defendant company tendered to the plaintiff the sum of $400 in full settlement of the claim, which tender was, after the commencement of this action, brought into and deposited in court for the benefit of plaintiff. The question here presented is whether said $400 is the extent of defendant's liability under the insurance certificate. This depends upon the proper construction of the provisions found in the certificate and by-laws of the association relating to the army service of the insured.

Appellant claims that the term "regular army" as found in the provisions referred to, means the permanent military establishment of the United States, which is maintained both in time of peace and war, or the army known in common parlance as the "standing army of the United States." The United States statutes define "regular army" as "the permanent military establishment, which is maintained both in peace and war according to law." 4 U. S. Comp. Stats. 1916, § 1716, 30 U. S. Stats. at Large, ch. 187, p. 361, sec. 3. The act of Congress passed June 3, 1916, entitled "An act for making further and more effectual provision for the national defense, and for other purposes" (39 U. S. Stats. at Large, ch. 134, p. 166), provides that the army of the United States shall consist of the regular army, the volunteer army, the officers' reserve corps, the enlisted reserve corps, the national guard while in the service of the United States, and such other land forces as are now or may hereafter be

authorized by law.    It will thus be seen that the federal statutes providing for a military establishment of the United States distinguish between the regular army and other military organizations.    It is conceded that the insured did not become a member of the regular army.    He was a member of the national guard in the service of the United States.

It is appellant's contention that the term "regular army," as used in the certificate and by-laws, means the military organization of the United States designated in the federal statutes as the regular army, and that as insured was not a member of the regular army he was not engaged in the occupation prohibited by the contract.    This contention assumes that the prohibition applies only to those who might become soldiers in the army of the United States, leaving the insured at liberty to become a soldier in the army of England, Canada, France, Germany, or any other country without affecting the liability of the company under the contract.    If the prohibition were limited to soldiers in the United States army, the contention would be legitimate at least.    The term "soldier in regular army" is of all-inclusive significance.    It is more general than if it were "soldier in *the* regular army," which might indicate that some particular army was in mind.    The term "soldier in regular army" is used in the contract as descriptive of an occupation just as the terms, railway switchman, railway switch tender, glass blower, etc., are so used, and one enters such prohibited occupation when he enlists in the regular army of any country in time of war.    Furthermore, when we consider the purpose of the prohibition, we can discover no reason for a distinction between a soldier in the regular army and one in any other military organization.    Both are subjected to the dangers of warfare, which is the hazard against which the company sought to protect itself.    There is no reason to suppose that the company desired immunity from the hazard assumed by one of its members who should become a soldier in the regular army of the United States and not that of one

who should become a soldier in its other military establish-
ments or in the regular army of any other country. To
impute such a purpose to the company is to challenge its
patriotism and good citizenship. But a proper construction
of the contract, we think, discloses a special consideration
extended to all soldiers in the military service of the United
States. The by-laws classify as a prohibited occupation
"soldier in the regular army in time of war, except a member
who engages in service in the United States army or navy
in time of war may at his option maintain his certificate in
force for the full amount of the benefit payable, by paying
for the war risk at the additional rate of $3 per month," etc.
This provision extends protection to members engaging in
the military service of the United States denied to those
engaging in the occupation of soldier in the regular army
of any other country, and indicates a purpose on the part of
the company to discriminate in favor of those who enter the
military service of the United States. We do not think the
phrase under consideration is subject to the provincial con-
struction contended for by appellant. As used in the certifi-
cate of insurance, it means a soldier in the regular army of
any country, and the term "regular army" is not to be con-
strued with reference to the Congressional classification of
the military organizations of the United States. It may be
incautious to say that it includes all enlisted men in any army
of any nation in time of war, but certainly it should not be
restricted to the regular army of the United States. It
follows that the insured was at the time of his death engaged
in an occupation which by the terms of the contract limited
the liability of the company to forty per cent. of the face
value of the policy.

Appellant also claims that, because the insured died from
natural causes and not from any hazard peculiar to war, the
beneficiary is entitled to recover the full face value of the
certificate. The certificate provides that if "any claim ac-
crues while insured is so occupied, whether resulting from

such changed occupation or not, directly or indirectly, there shall be paid forty per cent. only of said claim."

In *Kelly v. Fidelity Mut. L. Ins. Co.* 169 Wis. 274, 172 N. W. 152, this court had under consideration an insurance policy which provided that if the insured should engage in any military or naval service and die as a result, directly or indirectly, of engaging in such service, the liability of the company should be limited. It was there held that the language limiting the liability of the company for such deaths as were due only to causes peculiar to the service did not limit the liability of the company for all deaths · occurring while in the military service. Under such a policy the company exempted itself from liability only where death resulted from some cause peculiar to military service. The difference between the provision of the policy there under consideration and the certificate here before us is marked. This certificate provides that there shall be paid but forty per cent. of the claim where the claim accrues while insured is occupied in one of the prohibited occupations "whether resulting from such changed occupation or. not, directly or indirectly." The language of this certificate clearly limits the liability of the company where death results while the insured is engaged in the prohibited occupation, no matter whether the death results from causes peculiar to such occupation. While insurance contracts are to be construed most strongly against the company there is no room here for construction. To hold that under the language here employed the liability of the company is limited only in case death results from causes peculiar to the occupation would be a judicial declination to enforce the plain terms of the contract.

The appellant offered to prove that, upon inquiry made to the secretary of the local council on behalf of the insured, such local council secretary stated that the certificate did not require the payment of extra assessments as long as the insured was on this side of the ocean. The trial court declined to admit this evidence. The by-laws of the company

provide that the officers of the local council, as they are termed, are agents of the members and not of the supreme council. "Local councils or their officers or members shall have no authority whatever to disregard any of the laws of the order governing the benefit certificate or the several funds of the order." Clearly the secretary of the local council had no power or authority to bind the company by the statement sought to be proved and the testimony was properly rejected. *Voelkel v. Supreme Tent K. M. W.* 116 Wis. 202, 92 N. W. 1104; *Jones v. Modern Brotherhood*, 153 Wis. 223, 140 N. W. 1059; *Haycock v. Sovereign Camp W. O. W.* 162 Wis. 116, 155 N. W. 923. It is clear that the liability of the company was limited to $400, and that the judgment appealed from should be affirmed.

*By the Court.*—Judgment affirmed.