## Marks, et al. v. Supreme Tribe of Ben Hur.

(Decided May 6, 1921).

### Appeal from Henderson Circuit Court.

1. Beneficial Associations—Military Service—Public Policy.—A provision in a certificate exempting a benefit society from liability for death of insured while in the military or naval service of the government is not contrary to public policy.

2. Beneficial Associations—Public Policy.—It is not contrary to public policy for a benefit society to provide that its members shall stand suspended if they engage in certain prohibited employments, and the society will not be liable to one while so engaged, nor until the member has been reinstated, it being further provided that any dues paid into the society during such prohibited employment shall be returned to the insured or his beneficiary.

3. Beneficial Associations—Acceptance of Dues—Waiver.—Acceptance of dues by a benefit society, or by an officer thereof, with the knowledge that insured was engaged in an employment prohibited by the certificate does not waive a stipulation of the certificate which exempts the society from liability while insured is so engaged, where the effect of the provision operates merely as an exemption from liability in the particular instance. It is entirely consistent with such a provision that insured may be desirous of keeping the insurance in force notwithstanding the suspension of the member or the exemption of insurer from liability during the period he was engaged in an occupation not allowed by the certificate.

McCLAIN & PENTECOST for appellants.

W. A. WELLS for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Gurvis E. Marks on June 1, 1917, applied to appellee for life insurance in the sum of $1,000 and a certificate was issued to him on the 5th of that month.

The laws, rules and regulations of the society prohibited members from engaging in the military or naval service unless a permit was attached to insured's certificate, and such permit, grantable only to those becoming

members after April 6, 1917, was limited to service within the territorial limits of the United States. The certificate made no distinction between a voluntary and an involuntary enlistment.

April 29, 1918, insured was inducted into the military service of the United States, was sent to France, where he was killed October 23, 1918. Some time during September, 1918, and while insured was in the army, his father and mother (appellants), in compliance with a notice in the official publication issued by appellee, forwarded their son's certificate to the home office for the purpose of obtaining an enlistment permit. They were not advised as to the nature of the permit, nor did they know its contents until a date subsequent to the time they received word their son had been killed. By its terms the insurance was not payable if insured died or was killed while in the military service and beyond the borders of the States.

The regular monthly assessments were paid as they became due. Having received notice of insured's death the society tendered the beneficiaries the total dues paid under the certificate from its date, but this the beneficiaries declined to receive and suit was instituted on the certificate. A trial was had and at the conclusion of defendant's evidence the court ordered a directed verdict for the society.

It is urged with great earnestness that the prohibition against enlistment in the military service of the government is contrary to public policy and therefore void. It is argued that this is especially true in the case of an involuntary enlistment as where insured is inducted into the service under the Federal draft laws. The claim is made that insured's entry into the military service was involuntary, not his act but the act of the government for which he was in no way responsible in any greater degree than he would have been for an act of God. However, text writers and the decisions, with striking unanimity, agree that such conditions are valid. Joyce on Insurance, section 2237.

An insurance company or benefit society has the right to select the particular risks it is willing to assume and there is no public policy against a contract of this sort exempting the insurance company in advance from liability for the death of insured while in the military or naval service of the government. The provision of the

certificate merely provides for an exemption from liability under certain circumstances and conditions, which holds out no inducement to the insured from refraining from enlistment in the country's service and does not constitute in any sense an incentive or agreement not to enlist or a reason to evade the draft laws.

At the time the certificate was issued this country had entered the World War, a fact well known to the insurer and the insured. The latter was of draft age, a single man, in good health and both parties to the contract well knew he was subject to be called by the government to do military service. With this knowledge on the part of both, this contract of insurance was entered into. The government to which both owed allegiance had the right to call deceased into its service, nor do we perceive that public policy prevented the parties from contracting that in the event insured should be inducted into the service the society would not be bound if death occurred while so engaged. Miller v. Illinois Bankers Asso., 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378; Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, 177 N. W. 242; Long v. St. Joseph Life Ins. Co. (Mo. App.), 225 S. W. 106.

The question of the want of patriotism prompting such action on the part of appellee's officers, and which is presented with so much fervor is a matter which unfortunately does not affect the validity of the contract.

It is provided in the application signed by decedent that he agreed for himself and the beneficiaries to abide by the laws, rules and regulations of the Supreme Tribe and the beneficial certificate therein, together with all amendments thereto, and if he should change his occupation from that stated in the application he would so notify the Supreme Tribe in writing. Applicant also agreed that should he thereafter engage in any occupation prohibited by the laws of the Supreme Tribe that from and after the date of his so engaging in such prohibitive occupation his right, as well as the rights of the beneficiaries, to participate in the benefit fund of the order should cease and insured should stand suspended as a member. Furthermore that during the period of such suspension payment of dues by the insured, or the receipt therefor by any officer of the court to which insured belonged, or to the Supreme Tribe, should not be binding

upon the order until insured had been reinstated as provided by the laws of the society.

According to another provision in the laws and regulations where a member engaged in a prohibited employment all payments made by him while so engaged were to be returned to him, or to his legal representative. Appellant contends there was a waiver of these provisions of the application and rules, in that the district manager, with the knowledge of the fact that insured was in the military service and outside the constitutional limits of the United States, accepted dues under said certificate.

It is not clear said officer was apprised of this fact, but if he was so advised it would not alter the situation. First, because the record is silent as to the duties of the district manager and as regards his relation to either the Supreme Tribe or the local court. Although the constitution and rules of the Supreme Tribe name the various officers of the order and define their duties, nowhere do we find any reference to such an office as district manager. Nor does it appear that any official had any knowledge that insured was in the army in France.

Second. Granting that the district manager did have the authority to so bind the company there could be no recovery on the certificate. The provision in the certificate as to the prohibited employment was merely an exemption from liability on account of death occurring under certain circumstances. It was not contemplated the dues would cover the greater hazard incident to military or naval service. This is not a case where an acceptance of the dues with knowledge of the violation of the contract constitutes a recognition of the continued valid existence of the certificate. Nor do the facts of the case bring it within the principle that the forfeiture is waived where an insurance company entering into a contract, has knowledge through any of its authorized agents of facts that would work a forfeiture. The society had the right to stipulate under what circumstances it would be liable. Insured and his parents had the right to pay the dues and continue the certificate in force while he was engaged in the military service, notwithstanding the exemption from liability for death occurring during service in foreign lands. There was nothing in the payment of dues inconsistent with keeping the certificate alive. The duration of his stay in France was problematical. Had the certificate been allowed to lapse and insured not died in the

country's service, conditions may have arisen to prevent his procuring insurance. He may have then ceased to be an insurable risk. It is, therefore, not improbable insured was desirous of maintaining his certificate regardless of the exemption. The mere acceptance of dues by the society, with the knowledge that insured was so engaged in the military service of the government, did not constitute a waiver of the stipulations referred to. It therefore follows the lower court did not err in directing the jury to find its verdict for the society and the judgment is accordingly affirmed.