PAUL OLSON, Respondent, v. THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMAN OF NORTH DAKOTA, a corporation, Appellant.

(184 N. W. 7.)

**Insurance — beneficial order held not estopped to interpose defense that insured died in military service within insurance regulations.**

1. The failure of a beneficial order to demand or secure from its insured member, an appl'cation for war permit and the payment or refusal of an extra war premium provided by its regulations for its members engaged in military service, and the reception of regular assessments and lodge dues while knowing that the insured member was in the service do not constitute, for reasons stated in the opinion, waiver or grounds of estoppel.

**Insurance — provisions of beneficial certificate limiting liability where insured engages in military service held to state grounds of a status and not of causation.**

2. The provisions in a beneficial certificate or insurance which limits the liability of the beneficial Order if the insured member shall engage in the occupation of a soldier in time of war, engage in military service in time of war, or, shall enter in the service of the United States army, state grounds of a status and not of causation as a test, where no provisions otherwise indicate.

Opinion filed July 5, 1921.

Action in District Court, Stark county, *Crawford,* J.

Defendant has appealed from a judgment in plaintiff's favor.

Reversed and remanded.

*J. J. Mulready,* and *W. F. Burnett,* for appellant.

*L. A. Simpson,* and *J. W. Lee,* for respondent.

## Statement

BRONSON, J. This is an action upon a policy of life insurance. Trial was held before the court upon stipulated facts. On April 6, 1918, the defendant, a fraternal beneficial association, issued its policy of $1,000 upon the life of the insured, payable to his father, the plaintiff. Then the insured was a blacksmith at Tolna, N. D., aged 21 and unmarried. The application for insurance, signed by the insured, contained an agreement that if he "should hereafter enter the occupation of a soldier in time of war" his membership in the order would become null and void, and the rights of himself and his beneficiary in life insurance waived; further, that he agreed to be subject at all times to all laws, rules, and regulations of the Grand Lodge, existing or thereafter to be adopted. Law 200 of the order provides that no person shall be admitted to membership who "is engaged in the occupation of "soldier in time of war." Law 222 provides that any member who shall hereafter enter any of the prohibited occupations enumerated in Law 200 shall forfeit his membership, and that "his beneficiary certificate shall become null and void without the action of any lodge or officer thereof."

At the time when the policy was issued there was in force a regulation (adopted pursuant to a resolution of the advisory board of the Grand Lodge on September 1, 1917), which provided that any insured member, if he shall enter the service of the United States army may keep his insurance certificate in force and effect to the extent and upon the terms mentioned in three options: (1) That any member may, after first receiving a war permit, continue in force his entire insurance (not exceeding $2,000) upon the payment of an extra war premium of $50 per $1,000; (2) any such member, after first receiving a war permit, may continue his insurance (not exceeding $2,000) to the extent of 20 per cent. of the amount thereof; (3) any such member may avail himself of option 1 as to $1,000 and option 2 as to another $1,000.

It also provided that any such member desiring to avail himself of the options, shall make, within 30 days after he has been mustered into the service of the United States, application to the Grand Recorder for a war

permit, upon blanks to be provided by the Grand Lodge, and that any such member who failed to avail himself of such options would forfeit all of his rights and benefits for himself or his beneficiary, notwithstanding the fact that he might continue to pay regular assessments and lodge dues and the Grand Lodge may have known of his entry into such service.

Attached to the beneficiary certificate, issued to the insured member, appears the following:

"This beneficiary certificate is issued and accepted upon the express consent of the member that in the event he engage in military, naval, submarine, or aerial service in time of war, without first obtaining a permit signed by the Grand Master Workman and Grand Recorder, and availing himself of one of the options adopted by the advisory board of said Grand Lodge at its meeting held on September 1, 1917 (numbered one, two or three) the amount payable upon this beneficiary certificate in the event of his death during such service shall be the reserve actually maintained by the Grand Lodge in respect to this beneficiary certificate."

On June 23, 1918, the insured through the selective service law became a private in Company B, 313th Engineers, of our army, while at war with Germany. He went to France with his company. On July 29, 1918, Mr. Kiland (apparently a local officer of the order) wrote the plaintiff, as follows:

"I am in receipt of money order from you for $2.92 being for assessment No. 6 and lodge dues. This will serve as a receipt. Being that Henry is in the service he will have to sign the inclosed application for war permit, which they require to hold. As I do not know his address, I wish that you would send it to him and have him sign it and return to us as soon as possible."

The insured did not present nor sign the application for a war permit. The extra war premium was not paid.

On October 8, 1918, the insured, while in France in a hospital under the control of our government, afflicted with influenza, died, without ever having been in the zone of hostilities. Up to the time of his death all regular and other assessments and dues upon his insurance certificate and due the lodge had been paid. On November 11, 1918, the advisory board of the Grand Lodge adopted a resolution which provided that the board recommended to the finance committee the allowance of all claims in behalf of members in the service who had not received war permits upon the basis of 20 per cent. under option 2.

The plaintiff duly submitted proofs of the insured's death, and demanded payment of $1,000. The defendant offered to pay $200 in settlement of the policy, and also judgment in such amount with costs. The plaintiff rejected the offer. Pursuant to an order of the trial court without findings, judgment for the full amount of the policy was entered. The defendant has appealed therefrom.

## Decisions

The sole legal question involved in this case is whether the insured at the time of his death was subject, concerning his insurance contract, to the regulations of defendant restricting and concerning liability upon engaging in the occupation of a "soldier in time of war," upon engaging in military service, or upon entering the service of the United States army. The plaintiff contends that three months before the death of the insured the order had notice and knew that the insured was in the service; that it thereafter received payment of assessments and lodge dues of the insured, and thereby waived the rules and regulations upon which it relies, and is estopped from urging the same; that under the regulations providing for a war permit and the payment of an additional war premium the order made provisions for the signing of an application upon a blank to be furnished by it, and that thereunder it was incumbent upon the order to establish that an opportunity was accorded to the insured to make such application while the order continued to receive the payment of the insured's regular assessments and dues; that the record does not disclose that the death of the insured was occasioned by any increase of hazard through his entrance into military service or being a soldier in time of war; and that, pursuant to the decisions of this court in Myli v. American Life Insurance Co., 175 N. W. 631, 11 A. L. R. 1097, and Gorder v. Lincoln National Life Insurance Co., 180 N. W. 514, 11 A. L. R. 1080, the plaintiff is entitled to recover the entire amount of the insurance.

When the insured, while a civilian, became a member of the order with beneficial insurance, there was then in force the rules of the order concerning the options concerning which he agreed, and notice thereof was attached to the beneficial certificate issued to him. This regulation, accepted by the insured, provided that if he should enter the service of the United States army or should engage in military service he could continue his entire insurance in force by the payment of an additional war premium

of $50 and securing a war permit, or in force to the extent of 20 per cent. of the face thereof, upon securing a war permit only. The validity of that rule on grounds of public policy or otherwise is not attacked. It formed a part of the insurance contract. We are of the opinion that no acts of waiver nor such as to create an estoppel are shown. The order knew that the insured was in the service; it sent to his father, the beneficiary, a blank application for a war permit, with the request that it be sent to the insured for signature and return as soon as possible, the order stating that it did not know the address of the insured. The father, as the record shows, did pay, one assessment and lodge dues for the insured; the stipulated facts do not show that the insured paid any of such assessments or lodge dues after he entered the service. The necessity of a war permit has been voluntarily waived by the order. The failure of the order to demand or secure from the insured direct the payment of the extra war premium, and this application for a war permit, did not operate to make option 1 effective, in the absence of express acts of waiver. Neither the insured nor his father, the beneficiary, made any attempt to exercise option 1. The assessments and lodge dues were paid so as to invoke and make applicable option 2. The order has not attempted to claim or enforce a forfeiture of the policy. On the contrary, they assert a continuance of the policy under the limited liability of option 2. The knowledge of the order that the insured was in the service, and its continued acceptance of the assessments and lodge dues, operated, therefore, neither as a waiver or an estoppel. See Huntington v. Reserve Assoc. (Wis.) 181 N. W. 819; Miller v. Bankers' Life Assoc., 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378. The limited liability under the rules of the order therefore applies, unless the provisions concerned, upon interpretation and construction, establish as grounds for the limitation causation, and not status.

In Myli v. American Life Insurance Co., supra, where the policy provided that if, within five years from date, the death of the insured shall occur while engaged in military or naval service in time of war, the company's liability shall be limited, etc. This court held, upon construction of other provisions of the policy, that such provision did not exempt from liability where the death of the insured was not occasioned by extra hazard incident to military or naval service; further, that, where status or occupation are not clearly the basis for exemption from liability, and where the language employed indicates a desire to rely only against

an extra hazard, the policy will be construed to avoid forfeiture of the insurance. The court in such opinion further stated that if the provision of the insurance policy in question had stated:

"If within five years from date the insured shall enlist or become inducted into the military or naval service without having obtained a permit therefor, etc., then status would clearly have been a test."

In Gorder v. Lincoln National Life Ins. Co., supra, where the insured was required to obtain permission from the insurer to engage in military or naval service in time of war and to pay an extra premium, and, upon failure so to demand, and in the event of death of the insured in consequence of such service, there was a stipulated limitation of liability not greater than the legal reserve on the policy, this court recently held that the provision concerned limited the liability of the company only where death occurred in consequence of military or naval service. In other words, the character of the service, again, not the status, was the test. Those cases have quite fully discussed the test of status or causation. In some recent cases status has been recognized as the test of limited liability as fol'ows: Where the insured shall die while serving in any branch of the United States army or navy (McQueen v. Woodman S. C. 106 S. E. 32); if the insured shall engage in the occupation of a soldier in the regular army in time of war (Huntington v. Reserve Assoc. Wis. 181 N. W. 819); if insured shall engage in military or naval service in time of war (Bradshaw v. Insurance Co., 107 Kan. 681, 193 Pac. 332, 11 A. L. R. 1091); where insurance policy excepts military and naval service in time of war (Ruddock v. Insurance Co., 209 Mich. 638, 177 N. W. 242); if insured shall engage in military or naval service in time of war (Field v. Indemnity Co. Tex. Civ. App. 227 S. W. 530); where policy exempts death while in the service of the army or the navy of the government in time of war (Miller v. Life Association, 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378). But, see Long v. Insurance Co. (Mo. App.) 225 S. W. 106. Do the provisions applicable to the insurance contract involved establish status as a test? We are of the opinion that the provisions "engage in military service in time of war," "engage in the occupation of a soldier in time of war," and "enter the service of our United States army" fixed and were intended to establish the status of the insured, and not the character of the service, as the test of the restriction of liability. We are unable to discover any provisions that indicate the contrary. The judgment accordingly is reversed, with directions to enter judgment for

the plaintiff as offered by the defendant. The defendant will recover costs of this court.

ROBINSON, C. J., and ENGLERT and COFFEY, District Judges, concur.

CHRISTIANSON and BIRDZELL, JJ., disqualified, did not participate; ENGLERT and COFFEY, District Judges, sitting in their stead.

GRACE, J. (dissenting). This action is one to recover on a life insurance policy. The trial was to the court upon stipulated facts. On the 6th day of April, 1918, the defendant, a fraternal benefit association, issued its policy, in the sum of $1,000 on the life of the insured, payable at death to his father, the plaintiff. Insured was 21 years of age and unmarried.

We are of the opinion, the judgment should be affirmed, and this principally for three reasons:

Firstly. The following provision in the certificate, relied on by the defendant to avoid liability, is void, as being against public policy, and as tending in some degree to deter enlistments in military service in time of war. The provision is as follows:

"This beneficiary certificate is issued and accepted upon the express consent of the member that in the event he engage in military, naval, submarine, or aerial service in time of war, without first obtaining a permit signed by the Grand Master Workman and Grand Recorder, and availing himself of one of the options adopted by the advisory board of said Grand Lodge at its meeting held on September 1, 1917, (No. 1, 2 or 3), the amount payable upon this beneficiary certificate in the event of his death during such service shall be the reserve actually maintained by the Grand Lodge in respect to this beneficiary certificate."

If, for example, one of military age possess a beneficiary certificate for $2,000 at the time war was declared by the United States against Germany, and he at that time understood that, if he enlisted in military service without the consent of the insurance company, the certificate would become void, or largely so, it can hardly be doubted that he would in some degree be deterred from enlisting; or, even after the passage of the Selective Service Act, he might for the same reason hesitate to comply with its requirements, knowing, in the circumstances, that his act might avoid the certificate.

If such, in some degree, should be the effect, it cannot well be denied

that such provision is void. It would perhaps be otherwise if the certificate provided that, in the event of his entrance into military service, or in any of the various branches of it mentioned in the provision, a stated sum, over and above the regular assessment, would be charged as additional premium for extra hazard incurred during each year he was in military service, and that such sum should be and remain a charge against the amount named in the policy; or if there were a provision contained in the certificate that, if this extra premium were not paid within a reasonable time after the termination of the military service, then, in that event, the certificate would be void; or even if it provided that the certificate would be void after service of notice by the defendant on the insured and his beneficiary that, if the extra premiums demanded were not paid within a reasonable time after they became due, as, for instance, within six months, the policy would be of no further effect; but such is not the tenor of the provision we are here considering. Furthermore, it is unreasonable, in that it seeks to make the status of military service, regardless of the increase of hazard, the sole cause for limiting or avoiding liability on its certificate.

In other words, if the insured should enlist in the military service, in the defense of his country, whether there was any increase in hazard or not, by his so doing his certificate of insurance is absolutely void, unless he first gets permission from the insurance company, and pays the extra premium, etc.

Assume, for instance, that in a real estate mortgage there was a provision that, if the mortgagor, a person of military age, should engage in military service in time of war, such act would constitute a default, and be sufficient authority for the mortgagee to foreclose the mortgage. Can any one believe, or reasonably contend, that such a provision would not be against public policy, and for that reason void. We think not. And so we might further illustrate by numberless contracts of different nature, but it would seem unnecessary to do so.

An insurance certificate or policy is nothing but just an ordinary contract. There is no reason why such a provision should be regarded any more favorably in an insurance contract than if it occurred in any other form of contract. The entire contract is to be construed to determine its purpose and effect, and, when so construed in the light of what has above been said, the defendant cannot, on account of the provision above mentioned, avoid its liability.

Secondly. The death of the insured being caused by influenza and not by any increased hazard because of military service, the prohibition contained in the provision is not effective to relieve the defendant of liability.

In the case of Myli v. American Life Ins. Co., 175 N. W. 632, 11 A. L. R. 1097, which was an action to recover on an insurance policy, where the insured died while in military service, not, however, from any extra hazard occasioned thereby, but from the disease of influenza, this court, speaking through Mr. Justice Birdzell, construed the following provision contained in the policy:

"If, within five years from the date hereof, the death of the insured shall occur while engaged in military or naval service in time of war without previously having obtained from the company a permit therefor, the company's liability shall be limited to the cash premiums paid hereon for the three years from date of issuance and thereafter to the legal reserve on this policy."

The identity of meaning between that provision and the one presented for our consideration in the present case is indeed exceedingly marked.

Of the provision under consideration in the Myli case, we said:

"The argument is that the above provisions reduce liability to a return of the premium in this case by reason of the fact that the insured was at the time of his death an enlisted man in the naval service. It is contended that the effect of the provision is to automatically cancel the life insurance stipulated in the policy the moment the policy holder becomes enlisted or inducted into the military or naval service without having previously obtained a permit therefor, and without complying with whatever provisions (not named in the policy) the company might wish to require concerning additional premiums. As against this contention the respondent asserts that it is the evident purpose of the stipulation to provide only against the consequences of extra hazard incident to actual service in connection with hostilities.

"Before the harsh construction in the direction of forfeiture can be supported it must be found to result necessarily from the provisions of the policy. The policy must be read in the light of the obvious purpose of the particular provision, and it must be found that the exemption falls clearly and directly within its terms. It seems clear to us, upon a view of the whole policy and the evident purpose underlying the particular

stipulation, that the circumstances of this case do not bring the defendant within the exemption contracted for. * * *

"Reading the whole policy, we deem the intention of its various provisions with regard to the restrictions concerning military or naval service to be clear. The express intention does, in reality, conform to the purpose of the provision as stated in the deposition of an officer, of the company, namely, to except the policy from applying where the insured has come to his death from a hazard connected with military or naval service. In short, the status of the insured is not made the test, but the character of the service. The important words in the clause relied upon and those which signify its correlation with the other provisions hereinbefore referred to are 'while engaged in military or naval service.' These words are descriptive of two forms of hazardous service that are not intended to be covered, and it is only while the insured is engaged in such service that the exemption is applicable. It is idle to say that because one's status is such that he must respond to orders from military or naval authority, he is in military or naval service within such a provision, when in fact there is nothing about his daily activities that suggests the least physical danger that would enhance an insurance risk."

That language and reasoning is directly applicable to the case now before us. It is idle to say that, because the insured here died in the hospital, from influenza, his death was caused by military service.

Thirdly. The defendant had notice and knew that the insured was in military service, and thereafter it received payment of assessments and lodge dues, with full knowledge of this fact. Hence it waived any defense, if any it had, with reference to the insured entering the prohibited occupation of military service, unless under conditions specified in the foregoing provision. It is therefore estopped to assert that defense.

For the foregoing reasons, the court did not err in refusing to render judgment for the plaintiff for the sum of $200 as requested by the defendant and appellant, and did not err in ordering judgment for the plaintiff in the sum of $1145.90.

The judgment appealed from should be affirmed.