HOOKER v. NEW YORK LIFE INS. CO.
No. 43 C 938.

District Court, N. D. Illinois, E. D.
June 21, 1946.

314

Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, Ill., for plaintiff.

Scott, Macleish & Falk, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The plaintiff brings this action to recover the double indemnity benefit in the policy issued by the defendant company on the life of his son. The complaint alleges that the insured's death occurred on May 19, 1943 in an accidental fall off a cliff. The defendant has paid the face amount of the policy, but resists payment of the double indemnity benefit on the ground that the insured's death was within an exception to the double indemnity clause, which provided that the double indemnity benefit shall not be payable "if the insured's death resulted, directly or indirectly, from * * * (d) war or any act incident thereto." The defendant alleges that the insured's death resulted when, as a member of the United States Marine Corps Reserve, on active duty in New Zealand, the insured, acting as an "enemy" scout during maneuvers, was "captured," and, in attempting to "escape," jumped into a clump of bushes which concealed the edge of a seventy-five foot cliff. In support of these allegations, the defendant has introduced the Navy Department file relating to the insured's death, which includes a certified true copy of the Report of Death, the reports of the Medical Officer and the Investigating Officer, and statements of witnesses. The statements of some of the witnesses, which were made in the field at the time of the accident, have since been confirmed in affidavits made by them in the United States, and introduced herein by the defendant. On the basis of these documents, the defendant has moved for summary judgment, on the ground that death occurring in maneuvers is the result of an act incident to war, and therefore is within the exception to the double indemnity benefit provision of its policy.

The plaintiff objects to the motion for summary judgment, on the grounds that the denials in the answer set up disputed questions of fact, and that the requirements of Rule 56 of. the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have not been satisfied, in that there are no depositions or admissions by the plaintiff to support the motion. The plaintiff also objects to the documents offered by defendant in support of its motion, and challenges the report of death as an unofficial document based on hearsay. The plaintiff asserts, therefore, that the documents do not resolve questions of fact, and that the question whether the insured's death resulted directly or indirectly from war or any act incident thereto is itself a question of fact which should be submitted to a jury.

 In the view which the court takes of this case, it is unnecessary to pass in detail upon all of the plaintiff's objections. The best evidence of the facts concerning the insured's death is the statements of witnesses. Some of those statements have been confirmed in affidavits made since the witnesses have returned to the United States. While affidavits of witnesses who are available would not be admissible on a trial of this cause, such affidavits may, under Rule 56 of the Rules of Civil Procedure, be considered on a motion for summary judgment. The plaintiff, indeed, does not challenge the accuracy of the facts set forth in the witnesses' affidavits and has offered no counter-affidavits relating to the circumstances of the insured's death. Since the statements in the report of the investigating officer and the report of death concerning the circumstances of the insured's death are based on interviews with witnesses, and since affidavits of some of those witnesses are available, these reports need not be considered. On this motion, therefore, the issue is reduced to a determination of the scope of the policy exception on the facts stated in the affidavits. The applicability of a policy exception is not a question of fact for a jury, but a matter of construction for the court. Bull v. Sun Life Assurance Co. of Canada, 7 Cir., 1944, 141 F.2d 456, 155 A.L.R. 1014, certiorari denied 1944, 323 U.S. 723, 65

S.Ct. 55, 89 L.Ed. 581. Although the formal pleadings appear to raise issues of fact, where, as here, it is apparent that there is no genuine issue of fact, it is proper for the court to proceed with a summary judgment. 3 Moore, Federal Practice, Section 56.01.

■■ The purpose of exception clauses in life insurance policies is, of course, to limit the area of risk assumed by the insurer, by excluding a type of hazard from which the risk of loss is not susceptible of actuarial prediction or is too great to be borne by the insurer for the premium charged. Because it is the insurer who draws the contract, and who can increase or decrease the area of risk by varying the wording of the exception, courts have announced the familiar rule that ambiguities will be resolved against the insurer.

In wording the general type of exception under consideration here, insurers have used a great variety of language. Decisions have often turned on the presence or absence of one word in the exception clause. Detailed analysis of those cases will therefore not aid in determining the proper interpretation to be given the clause in this case. Consideration of the various types of clauses used in representative cases, however, may be of assistance in determining the area of risk which the insurer intended to exclude in this policy.

Some insurers have written the broadest possible military exception clause, by making the insured's status as a member of the armed forces the criterion of non-liability. Perhaps the clearest status exception occurred in a policy which contained two clauses providing that death, resulting while the insured is in the military or naval service in time of war, is not covered, and that the insurance is suspended while the insured is in the military or naval service in time of war. It was held that the death of the insured, as a result of a fall from a hotel window while he was on leave from his military post, was within this exception clause. Such a clause is not against public policy. Bending v. Metropolitan Life Insurance Co., 1944, 74 Ohio App. 182, 58 N.E.2d 71. For similarly unequivocal status clauses, see Coit v. Jefferson Standard Life Insurance Co., Cal.App.1945, 161 P.2d 812; State Mutual Insurance Co. v. Harmon, 1945, 72 Ga.App. 117, 33 S.E.2d 105; Huntington v. Fraternal Reserve Ass'n, 1912, 173 Wis. 502, 181 N.W. 819.

The usual status clause does not contain a specific suspension or similar provision. One type merely provides that death occurring "while" the insured is in the armed forces is not covered by the policy. Marks v. Supreme Tribe of Ben Hur, 1921, 191 Ky. 385, 230 S.W. 540, 15 A.L.R. 1277. Death from pneumonia or influenza while the insured is in the armed forces is therefore not covered by the policy. Miller v. Illlinois Bankers' Life Ass'n, 1919, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378. When the exception clause stated that service in the armed forces was a "risk" not assumed, the word "risk" has sometimes been held to mean that the clause did not refer to the insured's status, but excepted only such additional risks as resulted peculiarly from military service. Illinois Bankers' Life Ass'n v. Davaney, 1924, 102 Okl. 302, 226 P. 101; Atkinson v. Indiana National Life Insurance Co., 1924, 194 Ind. 563, 143 N.E. 629. Contra: Ruddock v. Detroit Life Insurance Co., 1920, 209 Mich. 638, 177 N.W. 242. Exception clauses stating that death, while the insured was "engaged" in the military or naval service, was not covered have led to narrow distinctions. Thus, death from pneumonia was not excepted when the insured was at a training station remote from the war zone (Boatwright v. American Life Insurance Co., 1921, 191 Iowa 253, 180 N.W. 321, 11 A.L.R. 1085), but was excepted when it occurred in or near the war zone in France (Swanson v. Provident Insurance Co., 1922, 194 Iowa 7, 188 N.W. 677). Likewise, death from pneumonia was not excepted when it occurred while the insured was home on furlough, on the theory that one on furlough is not engaged in the military service. Long v. St. Joseph Life Insurance Co., Mo.Sup. 1923, 248 S.W. 923. Some courts have held that the term "engaged" indicates an intent that only deaths resulting from military duty or hazards peculiar to military service are excepted. Benham v. American Central Life Insurance Co., 1919, 140 Ark. 612, 217 S.W. 462; Barnett v. Merchants'

Life Insurance Co., 1922, 87 Okl. 42, 208 P. 271; Rex Health & Accident Insurance Co., 1920, 74 Ind.App. 507, 129 N.E. 248. Other courts have held that it means that an insured is not covered by the policy during the period when he is in the military service, thus construing the term "engaged" to refer to the insured's status. Bradshaw v. Farmers' & Bankers' Life Insurance Co., 1920, 107 Kan. 681, 193 P. 332, 11 A.L.R. 1091; Olson v. Grand Lodge, 1921, 48 N.D. 285, 184 N.W. 7, 15 A.L.R. 1270; Reid v. American National Assurance Co., 1920, 204 Mo.App. 643, 218 S.W. 957. When the term "enrolled" in the military or naval service was used in the exception clause, it would seem to refer more clearly than "engaged" to military or naval status, but the courts have differed in interpreting it. Compare Young v. Life & Casualty Insurance Co. of Tennessee, 1944, 204 S.C. 386, 29 S.E.2d 482, with Life & Casualty Co. v. McLeod, 1943, 70 Ga.App. 181, 27 S.E.2d 871.

Some insurers, like the defendant herein, have written result clauses rather than status clauses. Recognizing that service in the armed forces exposes many individuals to greater hazards than they faced in civilian life, some insurers have made death "resulting from" or "in consequence of" military or naval service the criterion of noncoverage. In interpreting such a clause, the courts have tended to restrict its scope to hazards peculiar to service in the armed forces, even though the death resulted while the insured was performing military duty and was not on leave from his military post. In Kelly v. Fidelity Mutual Life Insurance Co. of Philadelphia, 1919, 169 Wis. 274, 172 N.W. 152, 153, 4 A.L.R. 845, when the policy excepted death resulting from "directly or indirectly * * * engaging in (military or naval) service," it was held that death as a result of a motorcycle accident, while the insured was performing military but non-combat duty more than one hundred miles behind the combat zone in France, was not within the exception because it resulted from a cause not peculiar to military service. The same result was reached in Johnson v. Mutual Life Insurance Co. of New York, 1922, 154 Ga. 653, 115 S.E. 14, when the insured's death resulted from being struck on the head by the girder of a bridge as he passed by on a troop train, and in Starr v. Great American Life Insurance Co., 1923, 114 Kan. 315, 219 P. 514, when the insured's death resulted from influenza. In Redd v. American Central Life Insurance Co., 1918, 200 Mo.App. 383, 207 S.W. 74, it was held that death from pneumonia in a military camp in the United States during the first World War was not from "active service in the army or navy, in time of war," because it did not result from operations against the enemy, despite the different meaning of "active service" in military usage. When the insured's death resulted from the accidental discharge of a gun in the hands of another soldier, it was held not within a result clause because military service furnished only the occasion, not the cause, of the insured's death. Malone v. State Life Insurance Co., 1919, 202 Mo.App. 499, 213 S.W. 877.

In the instant case, the exception clause is based on "war and acts incident to war," not on "military or naval service." It is thus different from the type of result clause just discussed, since it is apparent that war is not synonymous with military or naval service. Civilians, as well as military and naval personnel, whose deaths result from war, are within a "war" clause. Hence, in the first place, a "war" clause is broader in the scope of personnel subject to the exception than a "service" clause. But, so far as military and naval personnel are concerned, war hazards are only a species of the hazards resulting from their service. Hence, in the second place, a "war" clause is narrower in the scope of hazards subject to the exception than a "service" clause.

Since the insured in the instant case was not killed in action, the question for determination is the scope to be given to the term "acts incident to war." Most of the cases which involved applications of the type of "war" clause found in the present policy were concerned with such questions as whether war exists prior to a formal declaration (Savage v. Sun Life Assurance Co. of Canada, W.D.La.1944, 57 F.Supp. 620; West v. Palmetto State Life Insurance Co., 1943, 202 S.C. 422, 25 S.E.2d

475, 145 A.L.R. 1461); or whether a war between foreign powers is within the meaning of the exception (Stankus v. New York Life Insurance Co., 1942, 312 Mass. 366, 44 N.E.2d 687; Vanderbilt v. Travelers' Insurance Co., Sup.1920, 112 Misc. 248, 184 N.Y.S. 54, affirmed 1923, 235 N.Y. 514, 139 N.E. 715).

No Illinois cases in point, which of course would be controlling here, can be found. Only one case in point has been found. In Eggena v. New York Life Insurance Co., Iowa 1945, 18 N.W.2d 530, the policy contained the same "war" clause as the policy under consideration here. The insured was killed at a training camp in the United States when a tank in which he was riding crashed through a bridge railing and fell to the stream bed. The court held that the insurer was not subject to double liability because training in a tank is incident to war, and said: "It was not a hazard of normal life but a hazard of one who was engaged in military service only." 18 N.W.2d at page 533.

■ It thus seems that the Iowa Supreme Court felt that the hazards resulting from military service are within the scope of a "war" clause and that a "war" clause and a "service" clause as hereinabove defined are synonymous. With this view I am compelled to disagree. Not all of the hazards of military service are a result of war, for some such hazards exist also in time of peace. One example is the risk attendant upon the handling of weapons and munitions. The fact, therefore, that death occurred as a result of military service is not enough, in my opinion, to bring the death within the scope of a "war" clause. It must also appear that the death resulted from a hazard peculiar to war. If the exception is not so limited, the insurer will be given the advantage of a broader exception clause than it wrote, and will be saved from liability when, by chance, the death occurred during, but not because of, war. Compare, in Gorder v. Lincoln National Life Insurance Co., 1920, 46 N.D. 192, 180 N.W. 514, 11 A.L.R. 1080, the court's refusal to hold death from pneumonia within a military service exception, because to do so would discriminate against those in the armed forces. Thus, as was discussed above, the courts, in construing the "military and naval service" clause, have excluded from its scope hazards common to civilian life.

The Iowa Supreme Court also held that training in a tank is incident to war. It is probably true that the war furnished the occasion for the insured's death, since he would probably not have been engaged in tank training had it not been for the existence of war. Compare Malone v. State Life Insurance Co., 1919, 202 Mo.App. 499, 213 S.W. 877. But it does not follow, in my opinion, that military training is an act incident to war within the meaning of an insurance exception clause. One could as well argue that death or accident befalling inexperienced civilian personnel in hazardous war industry is incident to war. We are less apt to be persuaded by this argument in the case of a civilian than if the death of a soldier is involved. But it should be remembered that we are not concerned here with a military service clause, and therefore the fact that the insured was in the armed forces does not determine the question.

Of course, since armed forces exist only because of the possibility of war, both peace-time and war-time military training would seem, in a sense, to be incident to war. But it would hardly be contended that death in peace-time training was incident to war. To hold that only war-time training is incident to war is to rewrite the "war" clause in this policy in terms of "military service in time of war." The insurer could have written the latter type of result clause or a military status clause. It does not seem likely, therefore, that the insurer was concerned with the hazards of military training or of military life in areas remote from combat. Furthermore, it is probable that the average citizen, considering the hazards incident to war, fears primarily enemy action, not training or service in the United States or in the peaceful rear areas of overseas theaters of operations. Indeed, it may be that an individual on military duty in inactive areas overseas is a better accident risk than a civilian or soldier in the United States, subject to the American traffic hazard. Finally, in con-

sidering what risk the insurer sought to avoid by the "war" clause in this policy, it should be pointed out that it was from enemy action that we suffered the great bulk of our casualties in the recent war. Although the statistics are not in evidence before the court, it may be noted that since the end of hostilities, with some hundreds of thousands of our forces still on overseas duty throughout the world, we see only an occasional report of death instead of the long casualty lists common during the war years.

On the other hand, the exception in this case was not written in terms of "death in action" and this court does not wish to be understood. as so limiting it. Compare, however, the very restricted meaning given the term "active service" in Redd v. American Central Life Insurance Co., 1918, 200 Mo.App. 383, 207 S.W. 74, discussed above. The death of an air crew, for instance, occurring on their return from a mission, in a crash resulting from combat damage suffered by the aircraft, would be within the exception in this case as incident to war. So also would be death resulting indirectly from war wounds. Compare Lofstead v. Bank Savings Life Insurance Co., 1925, 118 Kan. 95, 234 P. 50. It may also be that certain hazardous maneuvers, conducted in contemplation of a specific projected war operation, such as an amphibious or airborne operation, would, on proper proof, be held to be incident to war. Compare the court's approach toward coverage of contagious disease by a "service" clause in Gorder v. Lincoln National Life Insurance Co., 1920, 46 N.D. 192, 180 N.W. 514, 11 A.L.R. 1080.

I conclude, therefore, in respectful disagreement with the holding in the Eggena case, that the policy exception here includes, besides combat casualties, only such other deaths as result from activities in immediate support of operations against the enemy, or from enemy action not in combat, such as the sinking of a troop transport, or from other activities peculiar to war. Since the death of the insured in this case occurred in the course of routine training, it did not result from an act incident to war. The defendant's motion for summary judgment is therefore denied.

There remains the question of the proper disposition of the case, since the plaintiff has not made a cross-motion for summary judgment. If the plaintiff had made such a motion, and if the defendant had admitted the facts which it so strongly urges, by way of affidavits, in favor of its motion, it would be clear that the plaintiff would be entitled to summary judgment. Since the purpose of the summary judgment procedure under Rule 56 is to expedite the disposition of actions in which there is no genuine issue of fact requiring trial, it would seem that the court can properly enter a summary judgment in favor of the party entitled to it. 3 Moore, Federal Practice, Section 56.02.

"Rule 54(c) gives the court the power to enter the final judgment to which the prevailing party is entitled, even if the party has not demanded such relief in his pleadings, except in default judgment cases. The theory is that the form of the pleadings should not place a limitation upon the power of the court to do justice. So where one party has invoked the power of the court to render a summary judgment against his adversary, it is reasonable that this invocation gives the court power to render a summary judgment for his adversary if it is clear that the case warrants that result." Ibid., note 8.

The plaintiff is therefore granted summary judgment for $10,000, the amount of the double indemnity benefit. Interest and attorney's fees, asked by the plaintiff, are denied. Under Illinois law, interest (Smith-Hurd Ill.Ann.Stat., c. 74, sec. 2) and attorney's fees in actions on insurance policies (Id., c. 73, sec. 767) are allowed if the refusal to pay a sum due is unreasonable and vexatious. In view of the novel question of law involved in this case, the insurer's denial of liability pending the decision of the court cannot be said to have been unreasonable and vexatious.

The Clerk is directed to enter appropriate orders accordingly.