29 So.2d 350

**MERCHANTS NAT. BANK OF MOBILE v. COMMONWEALTH LIFE INS. CO.**

**1 Div. 273.**

Supreme Court of Alabama.

Jan. 23, 1947.

Rehearing Denied March 13, 1947.

McCorvey, Turner & Rogers, of Mobile, for petitioner.

Vickers, Leigh & Thornton, of Mobile, for respondent.

**PER CURIAM.**

The policy in question with reference to the double indemnity benefits contains the following provision, as set out in the opinion of the Court of Appeals: "The provision for Double Indemnity Benefits shall cease to be in force * * * (b) if the Insured engages in military or naval service in time of war."

It is our opinion that the provision for double indemnity benefits did cease to be in force prior to the death of the insured, and was not then in force because he had subsequent to the issuance of the policy engaged in military service in time of war, and such service had not terminated at that time, and the double indemnity provision of the policy had not for any reason shown been restored so as to be then in force. This conclusion is supported by Olson v. Grand Lodge, A. O. U. W. of N. D., 48 N. D. 285, 184 N.W. 7, 15 A.L.R. 1270, a decision of the Supreme Court of North Dakota wherein the case of Myli v. American Life Ins. Co., 43 N.D. 495, 175 N.W. 631, 11 A.L.R. 1097, by the same court, is distinguished; and by many of the authorities cited in the note to each of these cases. The following authorities, also, support this view: Field v. Western Life Indemnity Co., Tex.Civ.App., 227 S.W. 530, writ of err. ref. 240 S.W. XVII; Huntington v. Fraternal Reserve Ass'n v. Oshkosh, 173 Wis. 582, 181 N.W. 819; State Mutual Ins. Co. v. Harmon, 72 Ga.App. 117, 33 S.E.2d 105; Life & Casualty Ins. Co. v. McLeod, 70 Ga.App. 181, 27 S.E.2d 871; Lindsey v. Life & Casualty Ins. Co., 70 Ga.App. 190, 27 S.E.2d 877; Bending v. Metropolitan Life Ins. Co., 74 Ohio App. 182, 58 N.E.2d 71; Sandsted v. American Cent. Life Assurance Co., 109 Wash. 338, 186 P. 1069.

Concluding, therefore, that the reasoning of these cases, resting upon status rather than activity, represents the sounder view,

the judgment of the Court of Appeals is reversed, and a judgment is here rendered affirming the judgment of the trial court.

Reversed and rendered.

GARDNER, C. J., and BROWN, FOSTER, LAWSON and STAKELY, JJ., concur.

LIVINGSTON and SIMPSON, JJ., dissent.

SIMPSON, Justice (dissenting).

The insured at the time of his death was in the military service on active duty in the United States Army during a period when the United States was at war, but his fatal injuries were received in an automobile accident when he was not participating in any military activity and while on weekend leave from his Army post proceeding in a private automobile to visit his wife in a nearby town in Mississippi.

The insurance company contends that the insured's mere status by enrollment as a member of a military organization in time of war would render ineffective the double indemnity benefit provision of the policy and bar recovery. The majority opinion seems to be in accord with this view.

Plaintiff contends that reduction of liability in case of accidental death was not contemplated because of the mere status of the insured as a soldier on active duty in time of war, but was conditioned upon insured's death resulting from his participation in some military activity.

The question then is whether the exception or limitation of liability in the event of death of the insured if he should engage in military or naval service in time of war relates to the status of insured or the causation of death. Did the parties intend status or causation to govern liability?

There is some lack of harmony on this point in the adjudicated cases (See Note, 137 A.L.R. 1271 et seq.), but the stronger current of decisions and the better reasoned cases, I think, sustain the construction that such a limitation contemplates that death must have resulted from some activity of the insured undertaken in the course of such service, some act of insured connected

60

with the service. Barnett v. Merchants' Life Ins. Co., 87 Okl. 42, 208 P. 271; Benham v. American Central Life Ins. Co., 140 Ark. 612, 217 S.W. 462; Illinois Bankers' Life Association v. Jackson, 88 Okl. 133, 211 P. 508; Nutt v. Security Life Ins. Co., 142 Ark. 29, 218 S.W. 675; Long v. St. Joseph Life Ins. Co., Mo.Sup., 248 S.W. 923; Redd v. American Central Life Ins. Co., 200 Mo.App. 383, 207 S.W. 74; Malone v. State Life Ins. Co., 202 Mo.App. 499, 213 S.W. 877; Boatwright v. American Life Ins. Co., 191 Iowa 253, 180 N.W. 321, 11 A.L.R. 1085; Stephan v. Prairie Life Ins. Co., 113 Neb. 469, 203 N.W. 626. See also Young v. Life & Casualty Ins. Co., 204 S.C. 386, 29 S.E.2d 482; Myli v. American Life Ins. Co., 43 N.D. 495, 175° N.W. 631, 11 A.L.R. 1097; Atkinson v. Indiana Nat. Life Ins. Co., 194 Ind. 563, 143 N.E. 629; Rex Health & Accident Ins. Co. v. Pettiford, 74 Ind.App. 507, 129 N.E. 248; Kelly v. Fidelity Mut. Life Ins. Co. of Philadelphia, 169 Wis. 274, 172 N.W. 152, 4 A.L.R. 845; 29 Am.Jur. § 911, p. 695.

The rationale underlying these decisions is that, by encumbering the coverage with a military or naval service clause of this character, it was the intention of the parties to limit or restrict liability in the event of increased hazard to the insured by engaging in such service, the primary design of the contract being to insure against the ordinary hazards of life without reference to such limitation and if insured's mere status did not increase the hazard as a result of any military activity, the restricting clause would be without controlling effect.

The case of Barnett v. Merchants' Life Ins. Co., supra, is a leading authority from which the following is illustrative:

"There can be no serious contention but that the intention of the parties to the contract of insurance by inserting a military clause was to restrict and limit the liability of the company in the event of increased hazard to the insured by engaging in military service. Now, if such service did not increase the hazard, the clause has served its purpose. * * *

"The phrase 'engaged in military service in time of war,' in order to have a consistent and harmonious construction in connection with the general terms and scope of the insurance contract, must denote such service as would increase the hazard or risk of the insurer. Where the insured died many miles away from actual military engagements, with an ordinary disease, common alike to civil and military life, there is no just reason to permit the insurer from escaping liability such as was assumed by it under its primary obligation as shown by the stipulation herein." 208 P. 271, 273.

The principle is universal that ambiguous provisions in an insurance policy will be given effect, if reasonable, to favor the insured and must be construed strictly against the insurer. The rule is particularly controlling here where the lack of harmony in the adjudicated cases as regards such a clause makes manifest the ambiguity. And, that a construction in favor of the insured is reasonable, is made apodictic by decisions of eminent state Supreme Courts of our country declaring coverage in such cases. I think the death of the insured was covered and believe that any different view would do violence to this fundamental canon of construction.

This principle of favorable construction toward the insured was well stated in Atkinson v. Indiana Nat. Life Ins. Co., supra, where it was observed: "The possibility of such a construction of the meaning of the military service clause, in the face of a denial of such construction by the appellee, declares its ambiguity. This very state of conjecture suggests the rule of law, long adhered to, that in construing an insurance contract, which by ambiguities is capable of two reasonable interpretations, that interpretation will be adopted which is most favorable to the insured, and against the insurer." 143 N.E. 629, 630.

The policy was prepared and issued by the insurance company. It would have been an easy task to have so worded the indemnity clause as to clearly indicate that the mere status of the insured in the service should be sufficient to make operative the stated anti-service provision and enough to relieve the insurer whether attributable to his military or naval activities or not. This was not the wording but, to the contrary and in the face of the well-reasoned and

long settled authorities construing such a provision as operative only if the insured's death should result from participation in the military or naval service, the indemnity proviso was expressed, as recited, and the insured accepted the policy under these conditions with this favorable construction having been accorded like and analogous provisions in other insurance contracts. Frankly, I can perceive of no sound reason for not applying the rule of strict construction against the insurer and in favor of the insured where, as here, a reasonable doubt as to the meaning of the provision under consideration by the court thus existed. This is the Alabama law. Ala.Dig., Insurance, ⊕146(3).

The case turns, of course, on the meaning of the word "engages," which has a definite legal connotation and has been frequently used in the law books (See 14 Words and Phrases, Perm.Ed., pp. 589 et seq.). The interpretation usually accorded the expression is that it connotes action, the opposite of static (or, as applied here, status). It has been under consideration by our own courts in connection with "engaging in business" (Harris v. State, 50 Ala. 127, 130; Friedlander Bros., Inc., v. Deal, 218 Ala. 245, 118 So. 508); "engaged in interstate commerce" (State v. Stein, 240 Ala. 324, 326, 199 So. 13, 14); "engaged in the practice of" medicine (State v. Sellers, 30 Ala.App. 512, 9 So.2d 19, certiorari denied 243 Ala. 118, 9 So.2d 20). This court in construing an allegation that a servant "while engaged in such service" etc. said: "The words, 'engaged in,' as used in each count of the complaint, mean, 'actively engaged in,' 'employed at,' or 'transacting or carrying on,' the work or business or service for which he was employed by the defendant." Alabama Fuel & Iron Co. v. Ward, 194 Ala. 242, 249, 69 So. 621, 624.

The expression has been frequently considered by the various courts. The insurance cases cited above are some of them. The discussion in Benham v. American Central Life Ins. Co., supra, is impressive as a correct interpretation when used as in the clause here under consideration. I quote: "The word 'engaged' denotes action. It means to take part in. To illustrate, a servant injured while in the operation of a train means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. So here the words 'death while engaged in military service in time of war' mean death while doing, performing, or taking part in some military service in time of war; in other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such service." 217 S.W. 462, 463.

In the light of the cited authorities and the announced rules guiding the construction of insurance contracts, it should be sound to hold the death of insured under the circumstances related did not bar recovery of the benefits under the double indemnity provision of the policy.

I think the majority opinion of the Court of Appeals was consonant with the foregoing views and therefore I dissent from the majority opinion of my own court.

LIVINGSTON, J., concurs in this dissent.