## Badanjak v. Metropolitan Life Insurance Co.

*W. Coburn Sweet, Jr.*, for plaintiff.
*Bradshaw, McCreary & Reed*, for defendant.

READER, P. J., February 14, 1944.—This action is brought to recover on a contract of insurance. Plaintiff filed her statement of claim on August 6, 1943. An affidavit of defense, including averments of new matter, was filed by defendant on September 7, 1943. Plaintiff filed her reply to the averments of new matter on September 24, 1943. On October 19, 1943, defendant took a rule on plaintiff for judgment on the pleadings, and on October 25, 1943, plaintiff filed an answer to this rule. The case is now before us on this rule for judgment on the pleadings. It has been argued before the court en banc, and briefs have been filed by counsel.

From the pleadings the following facts are agreed upon by the parties and may be assumed as the basis of our decision. On May 10, 1932, defendant, Metropolitan Life Insurance Company, issued to John Badanjak, Jr., a policy of life insurance in the sum of $1,800, in consideration of the payment of the premiums therein specified. A copy of the policy, no. 7683367A, is attached to the statement. With this con-

tract of life insurance, defendant also executed a contract of insurance against loss of life from bodily injury caused by external, violent, or accidental means. A copy of this contract is also attached to the statement. John Badanjak, Jr., the insured, died December 16, 1942. His death was occasioned by injuries received in an automobile accident and, it is conceded by defendant, was such an accidental death as is contemplated by the supplementary contract above referred to. The premiums on the contracts had been fully paid as required. At the time of the death of the insured the beneficiary under both contracts was his widow, Mary Badanjak, the plaintiff. Defendant paid to her the sum of $1,800, the amount payable under the contract of insurance against death from any cause. It refused to pay the like sum claimed on the basis of the accidental death of insured, denying liability under that contract. The action is brought to recover the said sum of $1,800 under the supplementary or double indemnity contract.

The double indemnity contract contains the following provisions:

"In consideration of the application for this Contract, as contained in the application for said Policy, . . . and in consideration of sixtytwo cents, payable ¼ annually as an additional premium herefor, . . . hereby agrees to pay to the beneficiary or beneficiaries of record under said Policy, in addition to the amount payable according to the terms of said Policy, the sum of Eighteen Hundred dollars, upon receipt, at the Home Office of the Company in the City of New York, of due proof of the death of the insured, as the result, directly and independently of all other causes of bodily injuries sustained through external means, provided (1) that such death shall have occurred while said Policy and this Supplementary Contract are in full force, . . . and (6) that death shall not have resulted from bodily injuries . . . sustained while the insured is in the Military or Naval Service in time of war.

"The insurance under this Supplementary Contract shall be suspended while the insured is insane, or while the insured is in the Military or Naval Service in time of war, in which event that portion of the additional premium received by the Company but unearned during the period of such suspense shall be refunded."

The insured, John Badanjak, Jr., was inducted into the armed forces of the United States on September 27, 1942. At the time of his death he had not been discharged from said armed forces. At the time of his death insured was at home on furlough. He was killed in an automobile accident having no causal connection with military service. Subsequent to insured's death, defendant learned of the fact of his military service, and returned to the beneficiary the premium on the supplementary contract paid during the month of November prior to his death.

Defendant takes the position that under the facts admitted in the pleadings it is relieved of liability by the provisions of the contract with reference to military service, hereinbefore quoted. We are therefore primarily concerned with the construction of these terms. A great many cases have been decided in which the courts have considered the effect of language creating an exemption from liability on the part of the insurer where the insured is in military service at the time of accidental death. These decisions, of course, vary with the language of the contracts. For the most part they fall into two general lines, the consideration of which will enable us to find the rule governing the present case. In the one line of cases the language generally used in defining the exemption from liability is that at the time of death the insured shall have been "engaged in military service". In some of these cases other language may be used, but it must have the same effect, that of requiring that the death must have been suffered in the course of actual military activity. The decisions in this line are generally to the effect that

exemption of the insurer from liability arises only where a *causal relation is* shown to exist between the military service and the death. In the other line of cases the language generally used in defining such exemption is that "death shall not have resulted from bodily injuries sustained *while the insured is in the military or naval service in time of war*". The decisions hold that in the case of contracts using this language the exemption arises from the status of one inducted into the military service and not yet discharged therefrom at the time of death. It does not depend upon any causal connection between the death and any form of military activity.

Counsel have furnished us with exhaustive and very helpful briefs. They discuss many of the decided cases, and cite many more. We are satisfied from our review of them that, for our present purpose, it will be sufficient to refer to but a few of the leading cases.

A case which states very clearly the position adopted by the cases of the first line above mentioned is that of Benham v. American Central Life Ins. Co., 140 Ark. 612, 217 S. W. 462. In this case the court said (p. 617) :

"The words in the restricted clause now under consideration mean something more than death to the insured during the period of time he was in military service of the United States. The word 'engaged' denotes action. It means to take part in. To illustrate, a servant injured while in the operation of a train, means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. So here the words, 'death while engaged in military service in time of war', means death while doing, performing, or taking part in some military service in time of war. In other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must

have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such service. This construction, we think, would be according to the natural and ordinary meaning of the words. By the use of the word 'engaged' it must have been intended that some activity in the service should have caused the death in contradistinction to merely a period of time while the insured was in the service."

Of the many others to the same effect we quote only one, the case of Long v. St. Joseph Life Ins. Co. (Mo.), 225 S. W. 106. The case adopts the interpretation of the words "while engaged in military service" stated in the language of the Benham case above quoted. It is most instructive, however, in its statement of the distinction between the effect of such language in the contract, and the expression "while the insured is in the military or naval service in time of war". It clearly recognizes that the latter language determines status as the basis of exemption from liability, and not the causal relation between the military service and the death. The facts in the case are thus stated in the opinion:

"In the month of May, 1918, insured enlisted in the United States Naval Reserve Force, and from that time continued to be a member of the United States Naval Force attached to the United States Naval Training Station at Great Lakes, Ill., for training, and while at said Naval Training Station, insured was engaged in training for actual participation in hostilities of war in the naval service of the United States.

"On November 23, 1918, insured was granted a furlough, and went to his home at Betheny, in Harrison County, Mo., and while there became ill of influenza and pneumonia, and died as a result thereof on December 4, 1918, without having returned to his station, and while said furlough was still in force. Said illness

was not caused by the service, nor is there any evidence that said service contributed to his death, but the furlough was granted and said death occurred after November 11, 1918, the date of the armistice between the forces of the United States and those of Germany. . . .

"In this case death came during the time the insured was a member of, or an enlisted man in, the naval service; but such death occurred while insured was at home on a furlough; and, according to the stipulated facts, the illness resulting in insured's death was not caused by the service he was in, nor is there any evidence that said service contributed to his death. In the insurance contract liability is reduced to the amount of the premiums paid, plus interest thereon at 5 per cent, in case of the death of insured 'while *engaged* in any military or naval service in time of war'." (Italic supplied.)

The following discussion in the opinion very clearly presents the distinction which runs through most of the cases and which we have hereinbefore stated:

"Now, if it was desired to express the thought that liability would be reduced if death occurred at any time during the period of insured's service, from the date of entrance thereinto down to the date of his discharge, why was the word 'engaged' used? If insured's mere status of being an enlisted soldier or sailor at the time of his death is to give effect to the clause and reduce liability, what necessity existed for saying therein that death must occur while insured is 'engaged' in any such service? The usual and ordinary, if not the universal, way of expressing a man's status in that regard, where no idea or thought of what he is doing therein is intended, is to say that he 'is in the service', not that he 'is engaged in the service'. No one ever heard a soldier or sailor, either from general to private or from admiral to 'gob', say he is engaged in the service, but only that he is 'in the service'. If, however, it is desired to convey the idea of his participation therein, or of what he is doing in that service, he will say, 'I am

in the service, engaged in recruiting, or in doing' so and so, whatever it may be. And this is the way these ideas are expressed in literature. Even in the quotation made by appellant in support of the contrary contention from the case of In re Smith's Will, 6 Phila. (Pa.) 104, the word 'engaged' is not used when the mere fact of being 'in the service' is expressed, but it is used when the idea of participation in some act or duty of that service is intended. It says:

" 'In common parlance, a soldier is understood to be in actual military service from the time of his enlistment until his discharge, whether he be in camp, garrison, hospital, at home on furlough, on the march, *engaged* in battle or siege.' (Italics ours.)

"If the clause in the insurance contract before us means what appellant contends it does, why was it not made to read 'in case of the death of insured while in the service,' etc.? Had it said this, or had it read that if insured died 'after having entered the military or naval service and before his discharge therefrom', there could be no doubt but that the clause had reference to the period of insured's service or his mere status in that regard. But, instead of doing this, it says 'in case of insured's death while engaged in any military or naval service'. The word 'engaged' has various meanings according to the subject-matter to which it is applied or the connection in which it is used. As applied to military or naval service, the word 'engaged' denotes action or participation in something being done in that service: Benham v. American Central Life Ins. Co. (Ark.), 217 S. W. 462; Nutt v. Security Life Insurance Co. (Ark.), 218 S. W. 675. Even if the war clause may mean what appellant contends for, yet, if it is open to two interpretations, the plaintiff is entitled to the one most favorable to the insurance, since such clauses are construed so as to restrict them to their 'narrowest limits': Reid v. American, etc., Ins. Co., 218 S. W. 957, 959. By putting the word 'engaged' in the exemption

clause when it was unnecessary if the mere status of being a soldier or sailor would create the exemption, the idea is conveyed that death must occur while insured is participating or taking part in that service in some way, and not merely during the period he occupies the status of being a soldier or sailor. Although the policy nowhere expressly says that death must be connected with the service as a possible cause, yet that is implied, or at least the clause is susceptible of being so understood and interpreted. In *Miller v. Illinois Bankers' Life Assn.*, 212 S. W. 310, 7 A. L. R. 378, the word 'engaged' in the exemption clause was not used with reference to such service, the clause in that regard merely reading 'death while in the service', and the application read that 'death while in the service . . . is not a risk covered at any time', etc. So that clearly the clause related to the period insured was in service. It will be observed, though, that the word 'engaged' was elsewhere used in the exemption clause with reference to 'violation of the law', and there it conveys the meaning hereinabove claimed for it, namely, action or participation therein is the thing guarded against."

It is true that in a number of cases in which the expression "while engaged in military service" is used in the contract of insurance the courts have reached a conclusion contrary to that stated in the cases above referred to. We think it is unnecessary to consider these cases at this time, since the word "engaged" is not used in the contract we are passing upon, and the present case is ruled by the broad distinction above stated.

One of the leading cases in which the language of the contract is substantially the same as in the present case is the case of Miller et al. v. Illinois Bankers' Life Assn., 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378. The clause in the insurance contract in that case with reference to the effect of military service was as follows:

"It is expressly provided that death while in the service in the army or navy of the Government in time of war is not a risk covered at any time during the continuance or reinstatement of this policy for any greater sum than the amounts actually paid to the company thereon."

The insured was inducted into the military service. He died of pneumonia in camp after he had been inducted into the service. It was held that the language quoted created a status, and that the liability of the insurer was suspended during the continuance of the status. This principle is enunciated in many cases. In fact, so far as we have been able to learn, there is no case which holds otherwise where such language is used. We are satisfied that this is the effect of the language used in the contract in suit, hereinbefore quoted. Although the death of the insured was caused by such accidental means as the policy contemplates, it occurred while he was in the status of military service by which the defendant was exempted from liability.

It is true that at the time of the injury and death of insured he was at home on furlough. The granting of a furlough, however, is not a release from military service. Whatever be the length of the furlough as granted it is liable to be terminated at any time. During its continuance the soldier is at all times subject to the orders of his superior officers. What the term "military service" imports is defined in the case of Ruddock v. Detroit Life Ins. Co., decided by the Supreme Court of Michigan in 1920, and reported in 177 N. W. 242. In construing the language of the exemption clause the court followed the case of Miller v. Illinois Bankers' Life Assn., above cited. It defined "military service" as follows (p. 247) :

"An examination of the authorities is convincing that one has entered 'military service' when he has

passed the examination, taken the oath, been enrolled as a soldier, and become subject to the orders of the military branch of the government. This, we think, is clearly the common understanding of that term. He then gives up for the time being the occupation of a civilian, and takes up the tasks of a soldier. He may no longer come and go as he pleases. He is constantly subject to the orders of his superiors. If he violates the Articles of War he is tried by a court-martial, a military court, his status is then fixed. He is as clearly in the military service when in training as when before the enemy. We think the parties to this contract so understood the term, as 'military service' in times of peace did not suspend the contract or relieve defendant of liability. The parties had the right to draw the line where liability would cease in time of war. They drew it at the point where the insured entered 'military service', when he was inducted into that service. Unless we interpolate the word 'active', or otherwise change the language of the contract, we must hold that the defendant was not liable under the terms of the contract."

To the same effect are the words used in the case of Smith's Will, 6 Phila. 104, hereinbefore quoted as part of the opinion in the case of Long v. St. Joseph Life Ins. Co. The latter case also states the effect of a furlough in the following language:

"If, however, the phrase 'while engaged in any military or naval service' is the same as 'while in the service', and can mean nothing more than that, then the fact that insured was at home on a furlough when he took sick and died makes no difference; for, whether in camp or on a furlough, he was 'in the service'."

We are satisfied that the fact that insured was at home on furlough when accidentally killed does not change the situation or deprive defendant of the benefit of the exemption clauses in the contract.

Two Pennsylvania cases have been called to our attention. Plaintiff cites as supporting her position the case of McCahey v. John Hancock Mutual Life Ins. Co., 27 Dist. R. 603. In this case it appeared that insured, while in barracks in this country, was killed by the accidental discharge of his revolver. As stated in the syllabus, the provision of the policy as to military service was as follows:

". . . that during the first policy year the insurer should be liable only to the amount of the premiums paid thereon if the insured should 'die *as the result* of military or naval service in time of war . . . without a permit for such service . . . from the company'." (Italics supplied.)

It seems to us too clear for question that this language requires, as a condition relieving the insurer of liability, that a causal relation be shown between the military service and the death. The case belongs in that line which we first considered in this opinion. By the language of the contract it is distinguished from the case now before us.

The other Pennsylvania case cited by defendant is that of Kieninger v. The Home Life Insurance Company of America, 3 D. & C. 111. In its opinion Court of Common Pleas No. 5 of Philadelphia County said, among other things:

"On July 11, 1918, the insured was drafted into the Army of the United States, and on July 26, 1918, he was ordered to report and was inducted into the military service of the United States, but did not notify defendant of the fact. He was sent abroad with the American Expeditionary Forces as a private in the 163rd Infantry, and, while part of the American Expeditionary Forces, died of acute rheumatism on Oct. 11, 1919.

"Due proofs of death were furnished to defendant. All the regular premiums were paid on the policy in

full to Nov. 1, 1919, but no extra premiums were paid. Paragraph 8 of the policy provides that 'if the insured shall engage in any military or naval service in time of war, the liability of the company in event of the death of the insured while so engaged, or within six months thereafter, will be limited to the amount of the legal reserve to the credit of the policy, less any indebtedness to the company herein; unless before engaging in such service, or within one month (of not less than thirty days) or at the time of paying the first premium due thereon, if the insured shall be then so engaged, the insured shall pay to the company at its executive offices in Philadelphia, Pa., such extra premium as may be required by the company, and in like manner shall pay annually thereafter on each anniversary of this policy, or within one month (of not less than thirty days) while the insured shall continue to be so engaged, such extra premium as may be required by the company'.

"The insured was drafted into the military service of the United States in time of war, and did not notify defendant or pay to the defendant any extra premium on the policy, and no increase in the premium was assessed by defendant. . . .

"The insured did engage in military service when he was inducted into the military service of the United States, and continued to engage in military service with his command, which was attached to the American Expeditionary Forces in time of war, until his death.

"Whether the rheumatism of which he died was contracted by exposure in the trenches or otherwise, it is unnecessary to inquire, as the policy made the limitation of liability effective if the insured engaged in any military service in time of war."

This case, of course, tends to support the position of defendant.

Since the argument of the case our attention has been called to the case of Bending v. Metropolitan Life Ins. Co. This case was decided by the Court of Appeals of Licking County, Ohio, on January 20, 1944. So far as we know it has not yet been reported. We have been furnished by counsel for defendant with a copy of the opinion. A brief statement of facts, taken from the opinion, is as follows:

"This is an appeal on question of law only from a judgment of the Trial Court in favor of the defendant. The plaintiff, Amanda Bending, was the beneficiary under an accident insurance policy issued in 1931 to her son, Robert L. Bending, deceased, in the sum of $1,000.00, on which the premiums had been fully paid at the time of the insured's death. In September 1942 Robert L. Bending was inducted into the military service of the United States and in June, 1943, while stationed at Fort Bliss, Texas, obtained a two day leave of absence and while at a hotel in El Paso was accidentally killed by falling out of a window. Defendant declined liability, among other reasons, because of a military exemption clause in said insurance contract. A jury was waived and trial was had to the Court upon the pleadings, agreed statement of facts and the evidence, the defendant not agreeing that the death of insured was accidental.

"The Trial Court, in a special finding of facts, found

"(a) That decedent, Robert L. Bending, died by reason of bodily injuries sustained through external, violent and accidental means.

"(b) That the insurance policy was in full force and effect at the time of the death of decedent.

"(c) That the decedent at the time of his injuries and death was in the military service of the United States."

The provisions of the policy as to military service, as stated in the opinion, are as follows:

"The Company 'hereby agrees to pay . . . provided (1) . . . , (2) . . . , (3) . . . , (4) . . . , (5) . . . , (6.) That death shall not have resulted from bodily injuries sustained while participating in aviation (etc . . . ) nor sustained while the insured is in the military or naval service in time of war'.

"The insurance under this supplementary contract shall be suspended . . . while the insured is in the military or naval service in time of war; in which event that portion of the additional premium received by the Company but unearned during the period of such suspense shall be refunded."

These terms are the same as those in the contract before us. The court reviews the decisions at length, including most of the cases referred to by us. It reaches the conclusion that the provisions cited make status, the fact of being in military service in time of war, in the sense hereinbefore defined, the basis of exemption, and do not require that a causal relation be shown between the death and the service. This case is as close to the one now before us, in its facts and contract provisions, as could be found. It very convincingly supports the position of defendant.

We think the validity of the provisions of the policy relating to military service, now under consideration, cannot be questioned. In some of the decided cases it has been contended that such provisions are void as contrary to public policy. They have quite generally been held to be valid. Freedom of contract seems to necessarily involve the right of the insurer to determine and specify the risks against which it is willing to insure another. The freedom of the insured is protected by his right to accept or reject the offered contract. The conclusion generally reached is thus summarized in the case of Marks et al. v. Supreme Tribe of Ben Hur, 191 Ky. 385, 386, 230 S. W. 540, 541:

"An insurance company or benefit society has the right to select the particular risks it is willing to as-

sume, and there is no public policy against a contract of this sort exempting the insurance company in advance from liability for the death of insured while in the military or naval service of the government. . . .

". . . text writers and the decisions, with striking unanimity, agree that such conditions are valid."

This question was merely suggested in certain of the cases cited in argument and briefs, and was not dwelt upon in argument. Plaintiff does not refer to it in the brief filed. We therefore do not further consider it.

For the reasons herein stated we. are of the opinion that defendant is entitled to judgment on the pleadings.