This is a suit to restrain violation of a covenant in restraint of trade. The complainants and the defendant Willow Supply Co., in 1942 were competitors in the business of selling materials for use in making and repairing advertising and other signs. Louis Perr was the president and practical owner of the company, and his wife, who is also a defendant, was the company's secretary. Due to war-time conditions, the defendants decided to get out of the business. On August 17th, 1942, complainants bought from the Willow Supply Co., for $6,481, all its stock in trade but not its fixtures, accounts receivable or good will. Complainants removed the materials they had bought to their own store, and continued to conduct business there in the same manner as formerly and not as successors of the Willow Supply Co. The company discontinued operations.
Contemporaneous with the sale and as part of the same transaction, the three defendants covenanted that they would not "for a period of three years after an Armistice shall be *Page 525 
declared between the United States of America and its present enemies (but in no event shall the period of this restriction exceed ten years from the date hereof), engage, or become interested, in the sign supply business anywhere in" several named counties of New Jersey, "either directly or indirectly, for themselves, or in partnership, corporation or Association with any other person, or as employee, agent, stockholder or otherwise."
In 1943, the defendant Louis Perr re-established himself in the business of selling supplies used in making neon signs, and on April 23d 1946, complainant began this suit.
It is likely that the parties intended that their covenant would be in force from the date of its execution until the third anniversary of the "Armistice," but the strict construction which is applied to such contracts (Stanley Fabian Corp. v. H.J.Theatrical, c., Co., 113 N.J. Eq. 5) leads to the conclusion that the defendants were free to engage in the sign supply business until an Armistice were made and are precluded only for a three-year period beginning with the Armistice. Defendants charge that complainants do not come into court with clean hands, since one of them, Edwin B. Glantz, told sundry persons in 1944 that Perr was violating the covenant, when in fact he was not. Glantz testifies that he did not then realize the covenant was not yet in operation, and the correspondence between the attorneys in November and December, 1944, shows the same state of mind. The conscience of complainant is clear.
Defendants also allege laches — that if complainants believed the covenant was in force in 1943, they should have begun their action shortly thereafter and not waited nearly three years. But the suit was not maintainable until after the Japanese had surrendered in August, 1945. Complainants' delay until the following spring did not prejudice defendants.
Defendants also argue that there has not been an "Armistice," and so the covenant has not yet come into play — and never will. The parties knew that business operations were much affected by the fact that our country was engaged in a tremendous war effort; they anticipated that upon the cessation *Page 526 
of actual military operations, conditions would begin to return to normal. In the first World War fighting had ended with the Armistice, and so the parties used that word in their contract to denote the formal conclusion of military operations. The circumstance that our enemies surrendered and that there was no armistice, in a technical sense, is immaterial. The Japanese surrender marked the beginning of the period during which the covenant is in force.
Perr denies that he is engaged in the sign supply business; he says he sells neon supplies. Beginning perhaps 20 years ago, neon lights have become more and more common in signs on store fronts and other advertising signs. Some dealers specialize in materials used in making neon signs; some specialize in materials for other types of signs. The defendants, before they closed their store in 1942, handled both kinds of supplies. Over half the inventory they sold complainants consisted of neon supplies. The business of selling supplies for making or repairing neon signs is within the scope of the covenant.
We now come to the serious question in the case — whether the contract is contrary to public policy. A contract in restraint of trade is invalid if it is not ancillary to a contract for the sale of good will or other subject of property, or to an existing employment or contract of employment. Bond Electric Co. v.Keller, 113 N.J. Eq. 195. Restatement — Contr., § 515
(6). Partial restraints incident to the sale of a business are sanctioned primarily because they are necessary to preserve the value of the good will which is a part of the property purchased.Palumbo v. Piccioni, 89 N.J. Eq. 41. Regardless of the subject of the main contract, the test of the validity of the subsidiary covenant seems to be whether it is reasonably necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract. If it is reasonably necessary, and no special injury to the public appears, the covenant in restraint of competition is sustained. Otherwise, it falls.United States v. Addyston Pipe and Steel Co.,85 Fed. Rep. 271; 29 C.C.A. 141.
In the case at bar, there was no transfer of good will which might need protection. But the transaction was more than *Page 527 
an ordinary purchase of merchandise by a jobber. Complainants bought defendants' whole inventory and thereby enlarged their own stock above normal.
Until the examination of Glantz was nearly ended, I understood that the covenant against competition was merely ancillary to the sale. But he testified that his principal objective in the transaction with defendants was the covenant and not the materials; that he paid defendants more than twice what the materials could have been bought for in order to get the covenant. It would seem to follow on principle that the covenant is void for it was not ancillary, but primary; the purchase was the ancillary feature. But I hesitate to rest my decision on this ground for, in Palumbo v. Piccioni, supra, Vice-Chancellor Leaming found that the complainant "was primarily induced to make the purchase in order to remove the competitor," and yet he enforced the covenant. So I will not weigh the objects which complainant was seeking to determine which was primary and which secondary; but rather, I will proceed on the theory that the covenant was ancillary within the meaning of the rule.
The purpose of the covenant was to give complainants the opportunity of disposing of the stock bought from defendants, unhampered by defendants' competition. A reasonable restriction to this end seems valid. The complainants feared that the "blackout" and other war measures would nullify their efforts to sell the stock so long as hostilities lasted. That is understandable. But a period of three years thereafter is unduly long. An estimate of how long it would take to dispose of the stock which Glantz says he could have bought for $3,000, would depend on the anticipated volume of sales of the particular items. Six months to a year would seem enough.
Even though the restraint were reasonable and the contract valid, yet it appeared at the hearing that the object of the covenant had been accomplished, that complainants, in the ordinary course of trade, had disposed of everything they had bought from defendants except a small amount of obsolete material. An injunction against breach of a contract is a form of specific performance and is governed by the same principles. It is a *Page 528 
discretionary remedy, dependent upon equitable considerations.Blake v. Flatley, 44 N.J. Eq. 228; Brown v. Brown, 33 N.J. Eq. 650; Brown v. Pursel, 109 N.J. Eq. 67; Van Name v.Federal, c., Corp., 130 N.J. Eq. 433, 443; 132 N.J. Eq. 302. A contract in restraint of trade is regarded as injurious to the public and void unless it be shown that the parties had a particular and proper purpose, sufficient to uphold it. When that purpose or object, which the parties had in mind and which alone gives the contract life, has been accomplished before the court is asked to act, the court should decline to enforce the covenant.
The bill will be dismissed.