[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 90 
This appeal depends on the operation of military service clauses in a policy of life insurance. In June, 1943, the defendant, the Prudential Insurance Company, *Page 91 
issued its policy on the life of Stanley Hromiko, payable to the plaintiff as beneficiary. The policy provided that the company would pay double the face amount of the policy in the event of the death of insured by accident, unless death should happen while insured was "a member of the Military, Naval or Air Forces of any country at war (declared or undeclared)." And in another part of the policy was a clause similar to the last: "If this policy contains a provision for a benefit in event of death by accidental means, the conditions and exceptions specified in the policy are hereby supplemented and amended to provide that no such benefit shall be payable if death results from any cause while the insured is in the Military or Naval Forces of any country at war."
The winter after the policy was written, young Hromiko applied for admission to the Navy College Program. He took the examinations, and was accepted, enlisted in the Naval Reserve and was ordered to duty as a V-12 student at Trinity College, Hartford, Connecticut. This was in February, 1944, at a time when insured was 17 years old. The following January 6, a Sunday, while insured was still a V-12 student at Trinity, and while he was on leave, he was involved in an automobile accident on the public highway in Hartford and suffered injuries from which he died two days later. The insurance company paid to the plaintiff the face of the policy but refused to pay double that amount, whereupon she brought action to recover the additional sum. Judgment was rendered for the defendant on the ground that the company was saved from the additional liability by the military service clauses. The plaintiff appeals.
The two military clauses are not repugnant to each other. They are separate bars, so that either clause is sufficient to defeat liability if the facts bring the case within its terms. Hayes v.Home Life Ins. Co., 168 Fed. (2d) 152 (1948). The second clause is the more favorable to the company and we will confine our attention to it.
Most of the cases dealing with such clauses turn on the question whether it is the cause of death or the status of the *Page 92 
insured at the time of death which determines liability. In the second clause quoted above, the company is relieved of double liability "if death results from any cause while the insured is in the Military or Naval Forces of any country at war." It would be difficult to express more clearly that the cause of death is immaterial to the question of liability. Liability depends entirely on the status of the insured. Jorgenson v. MetropolitanLife Ins. Co., 136 N.J. Law 148 (S.C. 1947), where are collected a large number of authorities from other jurisdictions. We add two excellent, recent cases: Coit v. Jefferson StandardLife Ins. Co., 28 Cal. (2d) 13; 168 Pac. (2d) 163;168 A.L.R. 673 (1946), and Merchants Natl. Bank v.Commonwealth Life Ins. Co., 249 Ala. 58, 29 So. (2d) 350
(1947). The real problem in the present suit is whether insured, at the time of death, was a member of the naval forces within the meaning of the policy.
The circumstance that insured was "on leave" the Sunday of the accident which resulted in his death, seems to us immaterial. We are not informed of the length of the leave. He may have been home for the Christmas holidays, or perhaps he was permitted to leave the campus for the day, or for the week-end. The leave did not change his status. Life and Casualty Ins. Co. v. McLeod,70 Ga. App. 181, 27 S.E. (2d) 871 (1943); Bending v.Metropolitan Life Ins. Co., 74 Ohio App. 182,58 N.E. (2d) 71 (1944).
"The Military or Naval Forces" is not a technical term. The expression is to be construed in accordance with the presumed intention of the parties to the contract, with what reasonable men would have meant by the words. If the meaning is doubtful, the words should be construed most strongly against the insurer and in favor of the insured. Gans v. Columbia Ins. Co.,99 N.J. Law 44, affirmed 100 N.J. Law 400 (1924); Jorgensonv. Metropolitan Life Ins. Co., supra.
The purpose of the military clause was to exempt the insurer from the additional liability in case the insured was a member of a class in which the hazard of death by accident (and battle deaths are so considered) is greater than normal. A member of the Naval Reserve, not on active duty, but pursuing *Page 93 
his ordinary civilian calling, would not be considered in the naval forces within the meaning of the policy, although under the statutes of the United States, the Reserve is one of the components of the naval forces. Similarly, a member of a federally recognized National Guard unit which had not been ordered into active federal service. On the other hand, officers and enlisted men on duty in Washington or in one of the numerous naval offices scattered throughout the United States, are clearly within the terms of the clause in the policy, although they are not more liable to accidental death than civilians.
The Navy College Program V-12 was open to boys between the ages of 17 and 20, who were high school or preparatory school graduates, and who might or might not be in college at the time of making application for the program. The purpose of the program was to provide officers for the Navy, Marine Corps, and Coast Guard. If the candidate, after examination and interview, was selected, he was immediately taken into the Naval Reserve and assigned as early as possible to a college under Navy contract. His preference for a specific college was an important factor in the assignment. The length of time an individual student continued in the program depended on his previous college education, if any, and the type of course which he pursued. For example, the curriculum for desk officer candidates covered four 16-week terms in the V-12 program, followed by four months in a Midshipmen's School, while candidates for the medical corps took five 16-week terms of premedical work, plus a complete medical course. Students in the program pursued the regular college course, were taught by the college faculty, and lived in a dormitory assigned by the college to the Navy students. But technically, at least, they were seamen on active duty; they wore the uniform and were under military discipline. The expenses of the students were paid by the Navy, and they received regular Navy pay.
There were, however, some peculiarities in the position of the V-12 students, beyond the nature of their work and their surroundings. Generally, an officer or enlisted man of the Navy may be transferred at any time from one kind of duty to another and from one post or ship to another. But these young men *Page 94 
were first accepted as V-12 candidates and then enlisted as a necessary step toward college, to be followed later by ordinary naval duty. So long as they kept up with their studies and behaved themselves, they could not be reassigned to a different kind of service without a breach of faith by the Naval authorities. Their anomalous status is recognized by Navy Regulations which disentitle to mustering out pay "personnel whose only service has been as a student under the college training program (Class V-12, Naval Reserve, Class III, D, Marine Corps Reserve) while actually in college while pursuing academic training." Navy Regulations, 34 C.F.R. § 22.2. See alsoVeterans Administration Regulation, 38 C.F.R. § 36.216(c)
for computing period of active service under the Servicemen's Readjustment Act.
With some hesitation, we have come to the conclusion that the enlistment oath, the uniform, the Navy pay, the Navy discipline, would fix the status of the insured in the mind of most people rather than the circumstance that he was a student in a New England college. His status was that of a member of the naval forces, and therefore the judgment will be affirmed, but without costs.