12 N.J. Super. 80 (1951)
78 A.2d 842
HARRY SCHAFFER, ESTELLE SCHAFFER, ISABEL MUSCATT AND SAMUEL GOLDBERG, AS TRUSTEES UNDER PARAGRAPH SEVENTH (a) OF THE LAST WILL AND TESTAMENT OF CARL MUSCATT, DECEASED, PLAINTIFFS,
v.
ALICE OLDAK, ESTELLE SCHAFFER, INDIVIDUALLY, ESTELLE SCHAFFER AND NATHAN SCHAFFER, AS TRUSTEES UNDER PARAGRAPH SEVENTH (c) 3 OF THE LAST WILL AND TESTAMENT OF CARL MUSCATT, DECEASED, LEWIS SCHAFFER AND DAVID SCHAFFER, INFANTS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 19, 1951.
*81 Mr. Harry Schaffer, attorney for plaintiffs.
Messrs. Bilder, Bilder & Kaufman (Mr. Samuel Kaufman appearing), attorneys for defendant Alice Muszkatblit Oldak.
Mr. Max Mehler, attorney for defendants Estelle Schaffer, individually, Estelle Schaffer and Nathan Schaffer, as trustees under paragraph Seventh (c) 3 of the last will and testament of Carl Muscatt, deceased, and Nathan Schaffer, guardian ad litem of Lewis Schaffer and David Schaffer, infants.
STEIN, J.S.C.
Carl Muscatt died on May 10, 1942, a resident of Red Bank, Monmouth County, New Jersey, leaving a last will and testament dated April 29, 1942, which was duly probated by the Surrogate of Monmouth County on May 25, 1942, who issued letters testamentary and of trusteeship to plaintiffs.
Paragraph Seventh of decedent's said last will and testament provided as follows:
"SEVENTH: All of the rest, residue and remainder of my estate, together with the net proceeds of the liquidation of the businesses of The Muscatt Mfg. Co., Inc. and The Lewis-David Corporation, I direct my Executors to pay over, distribute and divide as follows:
(a) The sum of Five Thousand Dollars to my Trustees hereinafter named, or the survivors or survivor of them, in trust, to hold said sum, together with all accumulations of income therefrom, for the duration of the present war, or during the life of my daughter, Estelle Schaffer, and twenty-one years thereafter, and at the expiration of the present war, or of the foregoing period, whichever shall sooner occur, to pay said sum and all accumulations of income therefrom to my brother, Leon Muszkablit, of Poland, and to his children, *82 Alice Muszkatblit and Roman Muszkatblit, or the survivors or survivor of them, but if all of them be then deceased, to pay the said sum with the accumulations of income therefrom to my daughter, Estelle Schaffer, and my son-in-law, Nathan Schaffer, or the survivor of them, to be held by them, or the survivor of them, for the benefit of my grandchildren under and pursuant to the terms of the trust set up for them in article Seventh, paragraph (c), section (3) hereof."

* * * * * * * *
"(c) To divide the balance of my estate and of the net proceeds from the liquidation of the businesses of The Muscatt Mfg. Co., Inc. and The Lewis-David Corporation into four equal shares and to pay over and distribute the same as follows:

* * * * * * * *
(3) Two shares to my daughter, Estelle Schaffer, and my son-in-law, Nathan Schaffer, or the survivor of them, to have and to hold the same upon the following trust:
(a) To invest and reinvest the same in United States Government Bonds and to collect the interest therefrom.
(b) To expend the net income therefrom for the maintenance, education and support of my grandchildren, the children of my daughter, Estelle Schaffer, until the youngest shall attain the age of twenty-one years, and upon said grandchild attaining the age of twenty-one years to pay over and divide the principal of the trust fund to and among my said grandchildren in equal shares.
(c) Should any of my grandchildren die before receiving the share of the principal to which he or she shall be entitled, then his or her share shall be distributed to and among my remaining grandchildren, share and share alike.
(d) Should all of my grandchildren die before receiving the principal of the trust fund, then said Trustees, or the survivor of them, shall pay the balance of the trust fund then remaining to my daughter, Estelle Schaffer."
Nathan Schaffer and Estelle Schaffer have duly qualified and are acting as trustees of the trust mentioned in Paragraph Seventh (c) 3 aforesaid.
On or about December 9, 1944, plaintiffs established the trust fund mentioned in paragraph Seventh (a) of the decedent's last will and testament aforesaid by the purchase of $5,000 par value United States Treasury Bonds, series 1971/66, bearing interest at the rate of 2 1/2 per cent payable on March 15 and September 15 of each year, and plaintiffs have collected interest to and including September 15, 1950, amounting to $717.53, and there is also due to the trust interest thereon from September 15, 1950.
*83 Estelle Schaffer has two children, Lewis Schaffer and David Schaffer, who are 16 and 13 years of age respectively.
On August 14, 1945, the President of the United States declared an armistice with Japan and further declared that all hostilities had terminated.
On or about March 13, 1950, the Magistrate's Court of Warsaw, Poland, entered its decision declaring that Roman Muszkatblit had died prior to May 9, 1946.
On or about May 5, 1950, the Magistrate's Court of Warsaw, Poland, entered its decision declaring that Leon Muszkatblit had died prior to May 9, 1946.
The only survivor, therefore, of Leon Muszkatblit, Alice Muszkatblit and Roman Muszkatblit is Alice Muszkatblit, who, by virtue of her marriage, is now known as Alice Oldak.
Alice Oldak is a citizen of Israel and resides at 25 Lillien Street, Tel-Aviv, Israel.
Alice Oldak contends that according to the true tenor and meaning of decedent's will it was his intention that the words "for the duration of the present war" and "at the expiration of the present war" mean the cessation of hostilities and not a declaration of peace by the signing of a formal treaty of peace and, consequently, that according to the true intent and meaning of the decedent's will she is presently entitled to the entire trust fund established by paragraph Seventh (a) of decedent's will together with all accumulations of income therefrom and she has demanded that plaintiffs forthwith turn over to her said trust fund with the accumulations of income.
Plaintiffs being uncertain as to whether they should comply with her demand bring this suit requesting instruction of the court with respect to the true tenor and meaning of the provisions of paragraph Seventh (a) of decedent's will and for judgment approving plaintiffs' administration of the aforesaid trust and the allowance of commissions and counsel fees.
The testator, when speaking of the duration of the war or of its expiration, contemplated the cessation of hostilities and not what is generally a much later event  the *84 signing of a formal treaty of peace. In this connection an important circumstance is present in the case. At the time the will was made the testator's brother and the latter's two children (the intended beneficiaries of the $5,000 trust here involved) were either residents of Poland or refugees therefrom. Poland was then under the heel of the Nazi conqueror and during the period of occupation the fate of those who remained and those who hoped to return depended upon the outcome of the conflict. A final Hitler victory might well have meant further extermination; an Allied victory hope and restoration. The testator naturally wanted that the bounty given by his will reach his beneficiaries and find its way into their living hands and not as loot in the hands of the invader. The end of the fighting was the event he was mindful of, for that event would long in advance of any formal treaty of peace drive the invader from the country and restore a state of civil law and order under which property and the enjoyment thereof would be secure. The testator was not thinking in terms of diplomatic procedure which calls for a formal peace treaty. The latter event might be postponed for many years following the actual fighting, as has turned out to be the historical fact in relation to World War II. Final treaties have not yet been concluded and, if the hopes and prayers of the democratic world should be disappointed, World War III may ensue while technically World War II remains formally unclosed. Only the patience and forbearance of the free nations have thus far preserved the peace of the world. The almost universal use of the phrase "preserve the peace" is indicative of the popular concept of the time when a war ends. In common parlance a war ends when the shooting stops. The law is settled here and in other jurisdictions that it will be presumed that words used in a will are used in their usual and popular meaning, unless it is clear from the context that a narrow or technical meaning is intended. Supp v. Second National Bank & Trust Co., 98 N.J. Eq. 242, 130 A. 549 (Ch. 1925); Woodruff v. White, 78 N.J. Eq. 410 (Ch. 1911); affirmed, 79 N.J. Eq. 225 (E. & A. 1911); Stout v. Cook, 77 N.J. Eq. 153 (Ch. 1910); Holcomb *85 v. Lake, 24 N.J.L. 686 (Sup. Ct. 1855). In Darnall v. Day, 37 N.W.2d 277 (Sup. Ct. Iowa 1949), the court held that only in matters which concern the public is the existence of war determined politically, but otherwise in matters involving purely private rights and relations. There a lessor undertook to make certain physical improvements one year after the end of the war. The court held that that meant one year after hostilities ceased and said:
"There is little doubt the parties here intended the words `after the war has ended' to mean after hostilities have ceased. War, in the practical and realistic sense in which it is commonly used, refers to the period of hostilities and not to a technical state of war which may exist after the fighting has ended. * * * The parties did not contract in terms of diplomatic parlance."
In other cases involving leases courts similarly construed phrases such as "duration of the war" and "end of the war." See Lincoln v. Harvey, 191 S.W.2d 764 (Ct. Civ. App. Texas 1945), and Di Lello v. Carozza, 188 N.Y. Misc. 819, 70 N.Y.S.2d 256 (Sup. Ct. App. Term 1947).
The holding of Vice-Chancellor Bigelow in Glantz v. Willow Supply Co., 139 N.J. Eq. 523 (Ch. 1947), is helpful by way of comparison. There a trade restrictive covenant was to endure for a period of three years after an armistice would be declared between the United States and its enemies. In a suit to enforce that covenant, the defendant contended that there had been no armistice since both Germany and Japan surrendered, and that what occurred was a surrender, not an armistice. The court held that the circumstance that in a technical sense there had been no armistice was quite immaterial and that what the parties contemplated by the use of the word "armistice" was the end of "military operations." Thus the court gave to the word its popular connotation and not that of its technical sense. In Scott v. Commissioner of Civil Service, 272 Mass. 237, 172 N.E. 218 (Sup. Ct. Mass. 1930), the court said: "When the armistice was signed it was generally recognized that the war had come to an end," and quoted President Wilson as saying to Congress on November *86 11, 1918: "The war thus comes to an end; for, having accepted these terms of armistice, it will be impossible for the German command to renew it." The court then added: "It is common knowledge that upon the signing of the armistice the war was actually at an end, and was so regarded by everyone. It cannot rightly be held that it was still in existence after November 11, 1918."
The case of Feil v. Senisi, 7 N.J. Super. 517 (Law Div. 1950), is clearly distinguishable. There the defendant pleaded the statute of limitations. The plaintiff countered by proof that the defendant was in active military service when the cause of action accrued and that the action was timely because the period of such military service could not under the applicable statute be included in the computation of the period limited for suit. The court held that the defendant's military service was "in time of war," although active hostilities had ceased. It held that a "state of war" still existed between the United States and the former Axis countries which could be ended only by "some formal termination, probably by treaties of peace." While that case involved private rights, nonetheless it called for a definition of a statutory phrase used in connection with military service, itself a matter which directly touched the public interest. The distinction that I draw in the instant case is that the words here construed are considered differently when used in private documents, such as agreements or wills, than when used in public documents, such as statutes, treaties and the like.
For the reasons stated, it is held that Alice Oldak, the last survivor of the three beneficiaries named in the trust under consideration, is entitled to receive the corpus of the trust, together with all accumulated increment thereon.