## Military Employment Preference

742

KANE, *Attorney General,* February 23, 1976—We have received a request for an opinion from your department interpreting the Preference in Public Employment Act of May 22, 1945, P.L. 837, 51 P.S. §§492.1, et seq., as amended.[1] Specifically, you have asked whether a former soldier in the armed forces of the United States, or member of any women's organization connected therewith, may take advantage of the additional seniority provision of the Act, 51 Pa.C.S. §7107, if he or she served during a time of armed conflict rather than receiving credit for additional seniority only if he served during a time of declared war. You are hereby advised that a former soldier in the armed forces of the United States, or member of any women's organization connected therewith, is entitled to the additional seniority as provided in section

---

1. This statute was codified by the Act of August 1, 1975, P.L. 216, 51 Pa.C.S. §§7101, et seq., without change, and became effective January 1, 1976.

7107 of the Military Code if he or she served either during a time of armed conflict or of declared war.

Section 7107 of the Military Code reads:

"Whenever a reduction in force is necessary in any public position . . . and personnel are discharged according to seniority, the number of years of service of any soldier shall be determined by adding his total years of service in the civil service or on public works to his total years of service as a member of the armed forces of the United States, or any women's organization officially connected therewith *during any war in which the United States engaged.*" (Emphasis supplied.)

There are two issues that must be resolved prior to the resolution of your question; what is the definition of "soldier" within the code, and what is meant by the term "war" as it is used in section 7107 of the Military Code.

The term "soldier" was defined in the original 1945 Act as a "person who served in the armed forces of the United States or in any women's organization officially connected therewith, during any war in which the United States engaged . . . and who has an honorable discharge from such service." In 1945, the Act was amended to insert the words "or armed conflict" after "during any war." In 1966, the act was amended specifically to include Vietnam veterans. Finally, the act was amended in 1972 so that the term "soldier" is currently defined as:

". . . a person who served in the armed forces of the United States, or in any women's organization officially connected therewith, during any war or armed conflict in which the United States engaged, or who so served or hereafter serves in the armed

forces of the United States, or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who has an honorable discharge from such service." 51 Pa.C.S. §7101.

It is clear that the term "soldier" within the meaning of the act, is one who has served or who shall serve in the armed forces or connected women's organizations during a war or armed conflict, such as Vietnam.

The question of what was intended by the word "war" in section 7107 of the Military Code, poses a more difficult question. Did the General Assembly intend to limit it to a declared war only, or did it intend to include undeclared wars and armed conflicts between the United States and other sovereigns?

General definitions of "war" are not very helpful. Black's Law Dictionary defines "war" as:

"Hostile contention by means of armed forces, carried on between nations, states, or rulers, or between parties of the same nation or state . . . [or] a contest by force between two or more nations, carried on for any purpose or armed conflict or sovereign powers or declared and open hostilities, or the state of nations among whom there is an interruption of pacific relations, and a general contention by force, authorized by the sovereign." Black's Law Dictionary 1754 (4th ed. 1968).

Such a definition is hopelessly broad and does not relate to the statute in question.

Several Pennsylvania decisions have construed the term "war" in order to decide whether it is limited to declared wars or includes armed conflicts between the United States and other nations. In

Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202 (1953), and Harding v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 270, 95 A. 2d 221 (1953), the Pennsylvania Supreme Court considered the question of whether the beneficiary of a life insurance policy could collect double indemnity under a provision of the contract if the insured was killed in the armed forces during a time of war, where the insured was killed in the Korean conflict. In both cases, the court held that the action in Korea was not a war in the constitutional or legal sense of the word. The court implied that only a declared war could, in fact, be considered a war under the terms of the insurance contract. The rationale for the court's decision was that if the definition of "war" were expanded to include armed conflicts, then the courts would have no criteria to determine what was a war and what was merely shooting short of war. The court stated that:

"The existence or non-existence of a state of war is a political, not a judicial, question, and it is only if and when a formal declaration of war has been made by the political department of the government that judicial cognizance may be taken thereof." Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 237, 95 A. 2d 202, 205 (1953).

In Thomas v. Metropolitan Life Insurance Co., 388 Pa. 499, 131 A. 2d 600 (1957), the court again considered a claim by a life insurance beneficiary that he was entitled to an additional payment because the insured was killed in a war: the Korean conflict. The court stated that it was bound by its previous rulings in Beley and Harding supra on the question of what constitutes a war as defined by the

insurance contract. However, the majority took pains to limit its decision to the particular facts of the case. Further, the court, in adopting the lower court's opinion, admitted that:

" 'It becomes very clear then that hostilities between nations can become war whether solemnly declared or not. War of the perfect kind, solemnly declared, is called declared war. War of the imperfect kind that has not been baptized with the name by Congress is known as undeclared war.' " Thomas v. Metropolitan Life Insurance Co., 388 Pa. 499, 507, 131 A. 2d 600, 604 (1957).

The court in Thomas interpreted Beley and Harding as defining two types of war, declared and undeclared. However, when interpreting the language of an insurance contract, for the sake of clarity and uniformity, the court held that the definition should be limited to that of a declared war.

In Morgan Estate, 2 D. & C. 2d 480 (Luz., 1954), the question arose as to the construction of section 1(b) of the Wills Act of April 24, 1947 (now Act of June 30, 1972, P.L. 508, as amended, 20 Pa.C.S. §2501), which allows a minor in the armed services, in time of war, to dispose of his property by will. The court, after acknowledging the Beley and Harding cases, announced that it would not be bound by their limited definition of "war." Instead, the court chose to define "war" in its popular sense, that is to include both declared and undeclared conflicts. The court (in an opinion by Orphans' Court Judge Benjamin R. Jones, now Chief Justice of the Pennsylvania Supreme Court) distinguished the previous cases by noting that here it was dealing with an enactment of the legislature and not with a private insurance contract.

Finally, other States and the Federal courts have

considered the definition of "war." In Morrison v. United States, 316 F. Supp. 78 (M.D. Ga., 1970), the question arose as to whether the Vietnam conflict was a war within the definition of the Federal Tort Claims Act. The act proscribes recovery for "[a]ny claim arising out of the combatant activity of the military or naval forces or the Coast Guard during time of war." 28 U.S.C. §2680(j), June 25, 1948, 62 Stat. 984, as amended. The court unanimously held:

"While it may be true that a de jure state of war cannot exist without a formal declaration of war, a war is no less a war because it is undeclared." 316 F. Supp. 78, 79 (M.D. Ga., 1970)

Several courts of other States have held likewise: Langlas v. Iowa Life Insurance Co., 245 Iowa 713, 63 N.W. 2d 885 (1954); Western Reserve Life Insurance Co. v. Meadows, 152 Texas 559, 261 S.W. 2d 554 (1953); Stankus v. New York Life Insurance Co., 312 Mass. 366, 44 N.E. 2d 687 (1942); Stanbery v. Aetna Life Insurance Co., 26 N.J. Super. 498, 98 A. 2d 134 (1953).

The preceding cases, while not controlling, are helpful in our analysis. They acknowledge that war may be interpreted either narrowly or broadly, depending upon the construction which the framer intended. Surveying all of the cases,[2] Morgan Es-

2. Recently Commonwealth Court in Shank v. Everett Area School District No. 639 C.D. 1975 (Jan. 23, 1976), ruled that a man who volunteered for military service during the Vietnam conflict could not avail himself of section 1176 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1176, which permits a public school employe a leave of absence if he volunteers for duty "in time of war or during a state of national emergency." The court held that during the Vietnam conflict there was no declaration of

tate is clearly the most applicable to the question at hand as it is a Pennsylvania case construing a legislative enactment.

The Statutory Construction Act of November 25, 1970, P.L. 707, 1 Pa.C.S. §1924, permits the title and preamble of a statute to be considered when interpreting a statute. The original act, when passed in 1945, was titled:

"Providing for and requiring in certain cases preference in appointments to public position or on public works for honorably discharged persons who served in the military or naval service during any war in which the United States engaged . . ." Act of May 22, 1945, P.L. 837.

The 1955 amendment to the act specifically provided for the preference in hiring and retention of veterans of armed conflicts and not merely those men and women who served in time of declared war. The act has been amended twice since 1955 and on both occasions the title has included the above phrase. The title of the act is evidence that the General Assembly intended that veterans of

---

war or national emergency. The implication in Shank is that a conflict must be declared to be a war. However, Shank should not be viewed as controlling for several reasons. First, the court in Shank dealt with the Public School Code rather than Chapter 71 of the Military Code. This becomes even more significant when one realizes that the reasons for construing "war" to include an undeclared conflict in the Military Code do not exist in the Public School Code, i.e., the language that exists in the title to the Preference in Public Employment Act and the broad definition of the term "soldier" in the Code as are discussed later in the text of this opinion. Also, the court in Shank was never directly presented with, nor did it fully consider, the question of whether the Vietnam conflict fit within the definition of the word "war." Finally, the authorities previously cited in this opinion far outweigh the implications in Shank.

armed conflicts, as well as those of declared wars, should be given seniority preference.

Further evidence of the intent of the legislature can be had by substituting the definition of the term "soldier" for the word "soldier" in the particular provision. Substituting the definition, the statute reads:

"Whenever a reduction in force is necessary in any public position, or on public works of the Commonwealth . . . the number of years of service of any [person who served in the armed forces of the United States . . . during any war or armed conflict in which the United States engaged] shall be determined by adding his total years of service in the civil service or on public works to his total years of service as a member of the armed forces . . . during any war in which the United States engaged." 51 Pa.C.S. §7107.

If the term "war" in this section is construed to include only a declared war, then the section loses its meaning. The statute, when interpreted in the above manner, allows preference for those who served in the armed forces during time of war or armed conflict but only if they served during a declared war. Such an interpretation makes little sense. A far more reasonable construction would allow preference for those who served either during an armed conflict or time of declared war. When seeking the intent of the legislature, there is always a presumption that the General Assembly did not intend a result which is absurd or unreasonable: 1 Pa.C.S. §1922(1).

A further question concerns the duration of a war or armed conflict; that is when, for the purposes of the act, does a conflict begin and end? Decisions that have dealt with the beginning of a war or

armed conflict have concluded that a war or conflict begins with the opening of hostilities: Stinson v. New York Life Insurance Co., 167 F. 2d 233 (D.C. Cir., 1948); New York Life Insurance Co. v. Bennion, 158 F. 2d 260 (10th Cir., 1946); Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202 (1953); Darnall v. Day, 240 Iowa 665, 37 N.W. 2d 277 (1949). Therefore, a war or armed conflict begins when the United States becomes involved in the hostilities.

Several courts also have considered the issue of the end of a war or armed conflict. It is clear that a declared war ends upon the cessation of hostilities rather than the signing of a formal peace treaty and Pennsylvania cases have so held: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202 (1953); Harding v. Pennsylvania Mutual Life Insurance Co., 171 Pa. Superior Ct. 236, 90 A. 2d 589 (1952), affirmed, 373 Pa. 270, 95 A. 2d 221 (1953). The courts of other jurisdictions are in accord: New York Life Insurance Co. v. Durham, 166 F. 2d 874 (10th Cir., 1948); Stinson v. New York Life Insurance Co., 167 F. 2d 233 (D.C. Cir., 1948); Langlas v. Iowa Life Insurance Co., 245 Iowa 713, 63 N.W. 2d 885 (1954). Further, although the preceding decisions dealt with declared wars, the language employed by the various courts makes it clear that they would apply the same logic to an undeclared conflict.

"[I]t is the common understanding that a war is no longer a war when the shooting is ended, regardless of official pronouncements . . . 'War in the practical and realistic sense in which it is commonly used, refers to the period of hostilities'.": Langlas v. Iowa Life Insurance Co., 245 Iowa 713, 720, 63 N.W. 2d 885, 889 (1954).

Such a decision only makes sense. If an official

pronouncement is not necessary to begin an undeclared war, as is necessary to begin a declared war, there is no reason why an official pronouncement should be relevant to end an undeclared conflict if it is irrelevant to the end of a declared war.

For the purposes of the Military Code, a declared war or armed conflict begins with the opening of hostilities and ends with the cessation of the action. Using the above criteria, it is possible to determine the exact dates, for the purposes of the code, of recent conflicts involving the United States. World War I began with the declaration of war on Germany on April 6, 1917, and ended on November 11, 1918, with the signing of the peace treaty. World War II began with the attack on Pearl Harbor on December 7, 1941, and ended with the signing of the peace treaty with Japan on September 2, 1945. The duration of the Korean conflict was from June 25, 1950, when the North Koreans attacked to July 27, 1953, which was the date of the cease fire at Panmunjom. The Vietnam hostilities began on August 5, 1964, with the Gulf of Tonkin incident and ended with the signing of the Paris Peace Accord on January 28, 1973.

When attempting to define "war," one must keep in mind a historical perspective. The original act was passed in 1945. At that time the term "war" had quite a different connotation than it does today. In 1945, World War II had just ended and World War I was still recent history. All large scale conflicts were formally declared wars. Today the large conflicts of recent memory, Korea and Vietnam, were not declared wars; but were waged on a scale and intensity approaching that of previously declared wars.

Finally, when examining the history of the act, it can be seen that the act was broadened several

times by amendments. The major amendments were in 1955, 1965 and 1972. The 1955 amendment expanded the title of the act to include armed conflicts and also expanded the definition of "soldier" to include those who served during armed conflicts as well as declared wars. The 1965 and 1972 amendments again broadened the definition of "soldier" to specifically include Vietnam veterans. In short, the General Assembly has acted to expand the coverage of the act to include each of the major undeclared armed conflicts in the last 25 years in which the United States was involved. In order to effect the intent of the General Assembly, and to be consistent with the evolution of the act, a broad interpretation should be given to the term "war" as it is used in section 7107 of the Military Code.

In conclusion, it is our opinion, and you are hereby advised, that section 7101 of the Military Code, 51 Pa.C.S. §7107, should be interpreted as granting to those veterans who meet the act's definition of "soldier" additional seniority, to the extent of the time they served in the armed forces of the United States during a declared war or armed conflict in which the United States was involved.